## McCool *vs.* Smith.

1. A statute of Virginia, passed after the 1st of March, 1784, when Virginia ceded to the United States her territory north and west of the Ohio, has not, and never had, any force within the limits of Illinois.

2. In ascertaining who is meant by *next of kin* in a statute of Illinois regulating descents or a distribution, the computation must be made according to the rules of the common law.

3. It is a sound rule, that whenever a Legislature in this country uses a term, without defining it, which is well known in the English law, it must be understood in the sense of the English law.

4. By the rules of the common law, terms of kindred, when used in a statute, include only those who are legitimate, unless a different intention is clearly manifested.

5. In Illinois a plaintiff in ejectment cannot recover upon a title which he acquired after the commencement of the suit. Such a recovery would be against an inflexible rule of the common law and an express statute of that State.

6. One statute is not to be construed as a repeal of another if it be possible to reconcile the two together.

Writ of error to the Circuit Court of the United States for the northern district of Illinois.

Hamilton McCool brought ejectment in the Circuit Court against Spencer Smith for the northeast quarter of section eleven, in township 10 north, of range 1 west, of the fourth principal meridian. The defendant pleaded not guilty, and a jury being called, found the following special verdict:

"That the land mentioned in the said declaration was, on the 7th day of June, 1818, duly granted by the United States to Alonzo Redman, for his military services in the late war between the United States and Great Britain; that said Redman was the illegitimate son of Polly Norris; that said Polly Norris had three other illegitimate children, named Eleanor Fogg, Joseph Melcher, and Sophia Norton; that Eleanor Fogg died without issue in the year 1824; that Joseph Melcher died without issue in the year 1814; that Alonzo Redman died without issue in the year 1825; that Polly Norris died without any other issue than as above stated, in the year 1837; that Sophia Norton married Reuben Rand in the year 1816; that Reuben Rand died in June, 1853; that Sophia Rand, on the 23d day of June, 1854, by her quit claim deed of that date duly executed, conveyed said land to one Levi F. Stevens; that said Stevens, on the 21st day of April, 1855, by his quit-claim deed of that date, duly conveyed said land to Spencer Smith, the plaintiff.

"That the General Assembly of the State of Illinois passed an act, entitled 'An act to amend an act concerning the descent of real property in this State,' approved February 12, 1853,' which act was approved by the Governor on the 16th day of February, 1857, which act is in the words and figures following, viz:

"'SECTION 1. *Be it enacted by the people of the State of Illinois, represented in the General Assembly,* That in all cases where any person shall have died, leaving any real property, before the passage of the act to which this is an amendment, which, by the provisions of the act to which this is an amendment, would have descended to any illegitimate child or children, such child or children shall be deemed and adjudged to be the owner of such real property, the same as if such act had been in force at the time of such death, unless such property shall have been proceeded against, and the title thereto vested in the

State, or other persons, under the law of this State concerning escheats.

"'Section 2. In all such cases, hereinbefore specified, where any such illegitimate child or children shall have sold and conveyed such real property by deed duly executed, or where the same would have descended by the provisions of the act to which this is an amendment, and shall have been conveyed by deed by the person to whom the same would have descended, then such conveyances shall vest the same title thereto in the grantee as by this act is vested in such illegitimate child, from the date of such deed, and in all actions and courts such grantee shall be deemed to be the owner of such real property from the time of the date of the conveyance.

"'Section 3. This act shall be in force from and after its passage.'

"That said lands have never been proceeded against, and the title thereto vested in the State, or other persons, under the law of this State concerning escheats.

"We further find, that John Brown, collector of taxes, in and for the county of Warren, and State of Illinois, did, on the 25th day of May, 1840, sell said land to Isaac Murphy, for the taxes due to the State and county aforesaid, upon said land, for the year 1839, and that he did, on the 9th day of September, 1843, in pursuance of said sale by deed of that date, convey said land to the said Murphy; that said collector, in making such sale and conveyance, did not comply with the law authorizing the sale of lands for taxes, and that said deed was for that reason invalid as a conveyance of the legal title. That said Murphy claiming said land in good faith, under said deed, improved, occupied, and cultivated the same, and paid all the taxes assessed thereon, for and during the years 1843, 1844, 1845, and 1846. That said Murphy, on the 7th day of April, 1847, by his deed of that date, conveyed the said land to Hamilton J. McCool, the defendant, who immediately thereafter took possession thereof, and has been in the actual possession thereof ever since, claiming the same in good faith, under said conveyances, and that he has paid all the taxes assessed upon said land for and during the years 1847, 1848, 1849, 1850,

1851, 1852, 1853, 1854, 1855, and 1856. That the taxes so paid to the said State and county, by the said Murphy and McCool, amount to the sum of one hundred and nine dollars. If from these facts the court is of the opinion that the plaintiff is entitled to recover, &c., then we find for the plaintiff, and that said plaintiff is the owner of the land, in fee simple, and assess his damages at one cent; otherwise, we find for the defendant."

Upon this verdict the Circuit Court gave judgment for the plaintiff, and the defendant took his writ of error.

*Mr. Browning*, of Illinois, for plaintiff in error. Redman being an illegitimate child, his mother could not take under the ordinance of 1787, which speaks only of children, descendants, parents, next of kin, &c. When words denoting kindred are used, either in laws or private instruments, without other additions, they include none but legitimate kindred. 2 Kent's Com., 212–13; 4 Kent's Com., 413–14; 3 Cruise Dig. Tit., 29, ch. 2, sec. 8, and note; 2 Domat., p. 26, Art. 2455; p. 49, Art. 2497 and 8; p. 88, Art. 2571; p. 211, Art. 2861; p. 280, Art. 3029; p. 283, Art. 3036; p. 178, Articles 2793 and 4; Illinois Stat. of Wills, sections 46, 47, and 53; *Bayley* vs. *Mollard*, (1 Russel & Mylne, 575;) S. C. 4 Cond. Eng. Chancery R., 565; *Wilkinson* vs. *Adams*, (1 Ves. & Bea., 422;) *Swaine* vs. *Kennedy*, (1 Ves. & Bea., 469;) *Beachcroft* vs. *Beachcroft*, (1 Madd., 234;) *Sherman* vs. *Angel*, (1 Bailey Eq. R., 351;) *Collins* vs. *Hoxie*, (9 Paige, 88;) *Durant* vs. *Friend*, (11 Eng. Law and Eq. R., 2;) *Owen* vs. *Bryant*, (13 Eng. Law and Eq. R., 217.)

The Illinois statute of 1829 provided, not that bastards should inherit from each other, or that their mother should inherit from them, but only that they should inherit from their mother. At any rate it does not embrace this case, for Redman died four years before it was passed.

The act of 1853 did provide, that upon the death of an illegitimate person leaving no husband, wife, or children, his or her estate should go to the mother; and if there was no mother, then to the mother's next of kin. But this act was prospect-

ive, and did not meet a case like this, where the decedent had died long before.

It was after the commencement of this suit that the plaintiff procured the act of 1857 to be passed, which is set forth in the special verdict, and which declares that the act of 1853 shall relate back to the cases of illegitimate persons who died before its passage. As a law which impairs existing rights, its validity cannot be sustained. *Gaines et al.* vs. *Buford*, (1 Dana, 499;) *Holden* vs. *James*, (11 Mass., 404;) *Hoke* vs. *Henderson*, (4 Dev., 7;) *Walley's Heirs* vs. *Kennedy*, (2 Yerg., 554;) *Bank* vs. *Cooper's Securities*, (2 Yerg., 600;) *Jones* vs. *Perry*, (10 Yerg., 69;) *Picquet's Appeal*, (5 Pick., 65;) *Lewis et al.* vs. *Webb*, (3 Greenl., 326.) Was it a legislative grant of public land by the State? The title was not vested in the State by a judgment of escheat, and therefore the grantee could take nothing, certainly nothing more than the inchoate right of the State. Ill. St. of Esch., Rev. Code of 1845, p. 225; 3 Blackstone Com., 259; *Fairfax's Devisee* vs. *Hunter's Lessee*, (7 Cranch, 625-6;) 2 Curtis, 690–1; *Craig* vs. *Bradford*, (3 Wheat., 599;) S. C. 4 Curtis, 308; 3 Com. Dig., Tit. Escheat, page 598, bottom paging; *Den* vs. *Simpson*, (Cam. & Nor., 192;) *Marshall* vs. *Loveless*, (Cam. & Nor., 233;) *McCrury* vs. *Allender*, (2 Har. & McHen., 409;) *Doe* vs. *Horniblea*, (2 Hayw., 37.)

If a proceeding had been instituted against the land as escheated, the present defendant would have been made a party, and his defence would have been unanswerable. He had bought the land from the State at a tax sale, paid for it, and been in possession fourteen years. But the grant was not to the plaintiff. If it vested title in anybody, it was either in Sophia Rand, who would have inherited under the act of 1853, or else in her grantee, Levi F. Stephens. True, Stephens attempted to convey to the plaintiff, but he had no title, and as his deed was merely a quit claim, his subsequently acquired title did not inure to the benefit of the plaintiff. Jac. Law Dict. *Grant Dellany* vs. *Burrett*, (4 Grl., 493;) *Funk* vs. *Dart*, (14 Ill., 307;) *Phelps* vs. *Kellog*, (15 Ill., 135.)

Even admitting that the act of 1857 was valid, conceding that it could operate retrospectively, and granting that it vested

a title in the plaintiff himself, still he could not recover in this action, because it was commenced before he acquired his title. Such is the rule of the common law, and the ejectment statute of Illinois is emphatic and clear to the same effect. Section 3 provides that no person shall recover in ejectment unless he has title *at the time of commencing the action.*

Besides all this, the defendant was completely protected by the statute of limitations, which declares that seven years' possession of land, with payment of taxes, shall entitle the occupant to be adjudged the legal owner to the extent of his proper title.

*Mr. Kellogg,* of Illinois, for defendant in error, argued that the mother of Redfield was his next of kin within the meaning of the law of descents, though the son was illegitimate; that his illegitimate sister could inherit, through her mother; and that the act of 1857 was constitutional.

1. The subtleties and refinements of the common law are not adopted in Illinois. In *Hays* vs. *Thomas,* (Breese, 136,) the Supreme Court of that State held that the civil law mode of ascertaining who are next of kin ought to be adopted in construing our statute; and therefore the mother is to be regarded as next of kin to her son. This is conclusive.

2. An illegitimate child may inherit land from the mother. The Illinois statute of descents declares, as its first proposition, that estates of persons dying intestate shall descend to his or her children and their descendants in equal parts.

That at common law, the word *child,* when used in statutes of this character, was limited to one born in lawful wedlock, is undeniable. But does the English law on this subject prevail in Illinois? No. From the earliest history of that State the policy of her legislation has been to change the English law. The statute of Virginia, passed in 1787, made bastards capable of inheriting from their mother, and transmitting inheritances on her part. This positive enactment, directly contravening the common law, became and was the law of Illinois until 1845, when the Legislature of the State expressly adopted the Virginia statute, by providing that the children of a single woman

McCool vs. Smith.

should not be excluded from taking her property by inheritance on account of their illegitimacy. Following tnis act of 1845, and amendatory of it, was the act of 1857.

Even at common law, bastards are recognised as children for every purpose but that of succession. Tenn. Rep., 101. They may take under a devise as children of their mother: Com. Dig., *Bastard*, E. They are punishable for incest: *Regina* vs. *Chaffin*.

It is established by the authority of *Hays & Thomas* that the statutes of distribution are to be construed by the civil law. By that law an illegitimate person may inherit from the mother, she being sufficiently certain, though the father is not.

The very point was decided in *Heath* vs. *White*, (5 Conn., 228,) that the word children in a statute for the purpose of inheriting from the mother shall be construed to include illegitimate children; and the same doctrine was expressly held in *Burling-ton* vs. *Fosby*, (6 Va., 83.)

3. The act of 1857 was constitutional and valid. To make a statute void it must be shown that it comes in direct conflict with some constitutional prohibition. It is not enough that it is retroactive, or divests antecedent rights, or gives remedies for defects in a title which would otherwise have been fatal, or affects pending suits, or gives a party rights which he did not possess before, unless it also impairs the obligation of a contract, or has the character of an *ex post facto* law. *Satterlee* vs. *Matthewson*, (2 Pet., 380;) *Watson* vs. *Mercer*, (8 Pet., 110;) *Charles River Bridge* vs. *Warren Bridge*, (11 Pet., 509;) *Wilson* vs. *Baptist Educ. Soc.*, (10 Bach., 318;) *Syracuse Bank* vs. *Davis*, (16 Bach., 188;) *Underwood* vs. *Lilly*, (10 Serg. & Rawle, 97;) *Tate* vs. *Stoolzfoas*, (16 Serg. & R., 35;) *Hepburn* vs. *Kurtz*, (7 Watts, 360;) *Baugher* vs. *Nelson*, (9 Gill, 299;) *Goshen* vs. *Stonington*, (4 Conn., 410;) *Mather* vs. *Chapman*, (6 Conn., 54;) *Beech* vs. *Walker*, (6 Conn., 190;) *Booth* vs. *Booth*, (7 Conn., 365;) *Norton* vs. *Pettibone*, (7 Conn., 316.) But this act of 1857 took away no existing right; it simply construes the acts of 1845 and 1853 by making them relate to previous as well as to subsequent cases. It confirms rights, but does not destroy them.

Mr. Justice SWAYNE. This was an action of ejectment

in the court below. Smith was plaintiff, and McCool defendant. A special verdict was found by the jury. The court rendered judgment for the plaintiff. The defendant has brought the case here by a writ of error, and is the plaintiff in error in this court.

The material facts of the case, as shown in the record, are as follows:

Polly Norris had four illegitimate children. Their names were: Alonzo Redman, Eleanor Fogg, Joseph Melcher, and Sophia Norton.

Alonzo Redman was the patentee of the land in controversy. He died without issue in the year 1825.

Joseph Melcher died without issue in the year 1814.

Eleanor Fogg died without issue in the year 1824.

Sophia Norton married Reuben Rand in the year 1816. Reuben Rand died in June, 1853.

Polly Norris died in 1837 without having had any other issue than those named.

Sophia Rand, on the 23d day of June, 1854, by her quitclaim deed of that date, duly executed, conveyed the land in controversy to Levi F. Stevens. Stevens, on the 21st of April, 1855, by a like deed of that date, conveyed the land to Smith, the plaintiff.

The first law of Illinois, making the blood of bastards heritable, was passed in 1829. This was wholly prospective, and is no otherwise material in this case than as showing the sense of the Legislature of the necessity of such legislation to produce that result.

On the 12th of February, 1853, the Legislature passed another law upon the same subject. It provides, that "on the death of any such person"—

His or her property shall go to the widow or surviving husband and children, as the property of other persons in like cases.

If there be no children, the whole property shall vest in the surviving widow or husband.

If there be no widow or husband, or descendants, the property shall vest in the mother and her children, and their de-

scendants: the mother taking one-half; the other half to be equally divided between her children and their descendants.

If there be no heirs as above provided, then the property shall vest "in the next of kin of the mother, in the same manner as the estate of a legitimate person."

This act also was prospective, and did not affect this case.

On the 16th of February, 1857, the Legislature passed an act amending the preceding act.

The first section provides, that where any person shall have died before the passage of the amended act, leaving property, which by the provisions of that act would have descended to any illegitimate child or children, such child or children shall be deemed the owner of such property, "the same as if such act had been in force at the time of such death," unless the title shall have been "vested in the State, or other persons, under the law of this State concerning escheats."

The second section provides, that in all the cases before specified where such illegitimate child has conveyed the property by deed, duly executed, "or when the same would have descended by the provisions of the act to which this is an amendment, and shall have been conveyed by deed by the person to whom the same would have descended, then such conveyances shall vest the same title thereto in the grantee, as by this act is vested in such illegitimate child from the date of such deed, and in all actions and courts such grantee shall be deemed to be the owner of such real property from the time of the date of the conveyance."

This act took effect from its date.

It is claimed by the counsel of the defendant in error that, "at the time of the cession of the northwestern territory to the General Government by the State of Virginia, the statute of that State directing the course of descents, passed in 1785, and which took effect January 1st, 1787, provided as follows:

"In making title by descent, it shall be no bar to a party, that any ancestor, through whom he derives his descent from the intestate, is or hath been an alien. *Bastards also shall be capable of inheriting, or of transmitting inheritance on the part of*

*their mother, in like manner as if they had been lawfully begotten of such mother.''*

It is claimed, also, that this statute continued in force in Illinois during the whole period of her Territorial existence, and after she became a State to a period later than the death of Alonzo Redman.

To this proposition there is a conclusive answer.

The General Assembly of Virginia, by a resolution of the 20th of October, 1783, authorized her delegates in Congress to execute a deed, ceding to the United States all her " right, title, and claim, as well of soil as jurisdiction," to the territory northwest of Ohio. The deed was executed on the 1st of March, 1784. From that time, except as to the reservations expressed in the deed, which in nowise affect the question here under consideration, Virginia had no more claim to, or jurisdiction over that territory, than any other State of the Union.

It is also claimed, that the act of the Legislature of Illinois of 1819, which was in force at the time of the death of Alonzo Redman, gave his estate, under the circumstances, to "the next of kin," and that applying the civil law interpretation to those terms, his mother was such *" next of kin,"* and hence took an estate of inheritance in the land in question under that act. Breese's Reports, 136, *Hays* vs. *Thomas*, is relied upon as authority for this proposition. In that case, the principle was applied as between legitimate persons claiming under a legitimate decedent. The same remark applies to *Hillhouse* vs. *Chester*, (3 Day's Rep., 166;) which the case of *Hays* vs. *Thomas* followed.

In *Hillhouse* vs. *Chester*, the court say :

"It cannot be pretended that the plaintiff is *next of kin* to Mary, if we give the same construction to the words which they have received in the English law."

"It has always been held that, to ascertain who this person is, the computation is to be made *according to the rules of the civil law.*" " Our statute, which directed that, in such an event, the estate of the intestate, both real and personal, should go to

the *next of kin*, was enacted at a time when the aforesaid statute of Car. II, and the construction given to it, was perfectly known. It is a sound rule, that whenever our Legislature use a term without defining it, which is well known in the English law, and there has been a definite appropriate meaning affixed to it, they must be supposed to use it in the sense in which it is understood in the English law."

The class of adjudications in England referred to were never claimed to affect the legal condition of bastards there. How can the same principle, decided in *Hays & Thomas*, have that effect in Illinois?

It is also claimed that the legal status of Alonzo Redman, at the time of his death, is to be determined by the civil and not by the common law; and it is insisted, that by the provisions of the civil law legitimate and illegitimate children stood upon a footing of equality. We have not deemed it necessary to examine the provisions of the civil law referred to, because, in our judgment, they have no application to the subject. When Alonzo Redman died, the common law of England was in full force in the State of Illinois.

The ordinance of 1787 guaranteed that "judicial proceedings" in the Territory should be "according to the course of the common law." In 1795, the Territorial governor and judges adopted that law for the Territory.

By an act of the Legislature of Illinois, of the 4th of February, 1819, it was provided:

"That the common law of England, and all statutes or acts of the British Parliament made in aid of the common law prior to the 4th year of the reign of King James the 1st, excepting the second section of the sixth chapter of XLIII Elizabeth, the eighth chapter XIII Elizabeth, and ninth chapter XXXVII Henry VIII, and which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered of full force until repealed by legislative authority."

This act has been in force ever since its date:

3 Scam., 301, *Penny* vs. *Little;* idem, 120, *Boger* vs. *Sweet;* id., 396, *Stewart* vs. *The People;* 5 Gil., 130, *Seeley* vs. *Peters*.

The Wills act of 1829, section 47, that of 1845, section 53, and the act of 1853, all, by the clearest implication, recognise the heritable disabilities of the illegitimate in the absence of enabling statutes. Such is also the theory of the act of 1857.

By the rules of the common law, terms of kindred, when used in a statute, include only those who are legitimate, unless a different intention is clearly manifested. This is conceded by the counsel for the defendant in error. The proposition is too clear to require either argument or authority to sustain it.

· The legal position of Alonzo Redman, at the time of his death, was what the common law made it. In the eye of that law, he was *filius nullius.* He had neither father, mother, nor sister. He could neither take from, nor transmit to, those standing in such relations to him, any estate by inheritance.

These views bring us to the conclusion that no title to the land in controversy was ever vested in Polly Norris, and none in Sophia Rand, nor in the plaintiff below, until the act of February 16, 1857, took effect.

This suit was commenced on the 2d day of July, 1855. Conceding that the act of 1857 vested in the defendant in error a valid title, can he recover in *this action?* The rule of the common law is inflexible, that a party can recover in ejectment only upon a title which subsisted in him at the time of the commencement of the suit. *Johnson* vs. *Jones,* decided at this term. So regardful has the State of Illinois been of this principle, that she has embodied it in a statute. Her eject-ment act provides that—

"No person shall recover in ejectment unless he has, at the time of commencing the action, a valid subsisting interest in the premises claimed, and a right to recover the same, or to recover possession thereof, or some share, interest, or portion thereof, to be proved or established at the trial."

If the plaintiff below can succeed in this action, it must be because the act of 1857 impliedly repeals this provision as to this case. If there were no such statutory provision, the act of 1857, being in derogation of the common law, would be construed strictly. "A repeal by implication is not favored." "The leaning of the courts is against the doctrine, if it be

*McCool* vs. *Smith.*

possible to reconcile the two acts of the Legislature together." Sedg. Stat. and Cons. Law, 127; 4 Gill and J., 1, *Canal Co.* vs. *Railroad Co.;* 5 Hill, 221, *Bowen* vs. *Lease;* 2 Barb. S. C. R., 316, *Williams* vs. *Potter.*

We see nothing in the act of 1857 which indicates a purpose to contravene this common law principle and supersede this statutory provision as respects this action. *It is possible* to reconcile the two acts. It may well be that the Legislature intended to vest the title retrospectively for the purpose of giving effect to mesne conveyances and preventing frauds, without intending also to throw the burden of the costs of an action of ejectment, then pending, upon a defendant, who, as the law and the facts were at the commencement of the action, must have been the successful party. A stronger case than this must be presented to induce us to sanction such a result by our judgment. If the plaintiff below can recover, it must be in action brought after the 16th of February, 1857. He cannot recover upon a title acquired since the commencement of this suit.

In holding otherwise, the court below committed an error.

Several other very important questions have been discussed by the counsel of the parties. We have not considered them, and intimate no opinion in regard to them.

*The judgment below must be reversed, and the cause remanded, with instructions to enter a judgment for the plaintiff in error upon the special verdict.*