## UNITED STATES v. HARDCASTLE.
### No. 2306.

District Court of Alaska. First Division. Ketchikan.
May 2, 1942.

G. W. Folta, Counsel at Large, Department of the Interior, of Juneau, for plaintiff.

Ziegler & King, of Ketchikan, for defendant.

ALEXANDER, District Judge.

This matter is before the Court on an information in the nature of quo warranto, brought by the United States of America, which seeks to oust Richard E. Hardcastle as one of the Alaska Unemployment Compensation Commissioners, and to seat John L. Cauble in his place.

To this information the defendant has demurred upon four grounds, viz:

1. The plaintiff has no legal capacity to sue.

2. There is a defect of parties plaintiff, in that the Rev. John L. Cauble is not joined as plaintiff herein.

3. That there is a defect of parties defendant, in that the Unemployment Compensation Commission and the individual members thereof are not joined as parties defendant therein.

4. That the information does not state facts sufficient to constitute a cause of action against the defendant.

The only ground of demurrer urged at the hearing is the fourth, "That the information does not state facts sufficient to constitute a cause of action against this defendant," the first three grounds being waived or totally disregarded. It is therefore to the fourth ground of demurrer that the Court will address its exclusive attention.

The facts in this case are briefly as follows:

The Territorial Legislature of Alaska convened, pursuant to call by the Governor in Extraordinary session at Juneau on March 19th, 1937, and during that session, inter alia, passed an act, Chap. 4, Extraordinary Session Laws of Alaska, 1937, known as the Alaska Unemployment Compensation Law. This act, by Section 10 thereof, created a Commission to be known as the Unemployment Compensation Commission of Alaska, and provided that such Commission shall consist of three members; the pertinent part of Section 10 of said act reading as follows:

Chapter 4. Extraordinary Session Laws of Alaska, 1937.

"Section 10. Unemployment Compensation Commission.

"(a) Organization. There is hereby created a Commission to be known as the Unemployment Compensation Commission of Alaska. The Commission shall consist of three members, *who shall be appointed by the Governor, by and with the consent of the Legislature, as soon as possible* after the passage and approval of this Act *and thereafter* when any vacancy occurs in its membership. During his term of membership on the Commission no member shall serve as

an officer or committee member of any political party organization, and not more than two members of the Commission shall be members of the same political party. Each member shall hold office for a term of six years, except that:

"(1) any member appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed for the remainder of such term; and

"(2) the term of office of the members first taking office after the date of enactment of this Act shall expire, one February 1, 1939, one February 1, 1941, and one February 1, 1943. The members of the Commission shall be Territorial officers and before entering upon the duties of their office shall take the oath of office prescribed for Territorial officers. The Governor may at any time, after notice and hearing, remove any Commissioner for gross inefficiency, neglect of duty or malfeasance in office."

Pursuant to § 10, Chap. 4, E.S.L.A.1937 above quoted, the defendant was appointed by the Governor on April 27, 1937, his term, as fixed by this statute, expiring on February 1st, 1941.

On March 26, 1941 the Legislature passed Chap. 40, S.L. 1941, amending Sec. 10, Chap. 4, E.S.L.A.1937 thereof; § 24 of which provides:

"Section 24.. That paragraph (a) of Section 10(a) (2) be *amended* by *adding thereto* the following:

" 'Upon the expiration of the term of a member the *Governor shall submit the name of his successor for confirmation by the Legislature then in session; if the Governor fail to submit such name the incumbent shall continue to hold office* and shall continue to perform the duties thereof *until his successor shall have been appointed and* his *appointment confirmed* by the Legislature *as in* this Section provided, *and no recess or interim appointment shall be made in such case.'* "

This amendatory act became effective on the date of its passage by virtue of an emergency clause. On March

27th, the day following the passage of the amendatory act, the appointment of defendant's successor was sent to the legislature by the Governor, which rejected the appointment and adjourned sine die on the same day.

On March 28th, the day following the adjournment of the legislature, John L. Cauble was appointed by the Governor to succeed the defendant for the term ending February 1st, 1947.

The defendant contends that Cauble's appointment is invalid because not made in accordance with the provisions of the amendatory act, in that Cauble's appointment was not confirmed by the legislature as required by the amendatory act.

The United States, on the other hand, contends that the amendment is prospective, and that therefore the appointment of Cauble was governed by the act of 1937, and seeks to oust the defendant from office and to have John L. Cauble declared rightfully entitled to said office.

In support of its position the plaintiff urges two points:

First: That the vacancy was subject to the provisions of the 1937 act because the amendatory act of 1941 is prospective in operation;

Second: The provisions of the amendatory act were complied with in filling the vacancy.

In support of its position the United States contends that the act of 1937 expressly conferred authority on the Governor "to fill vacancies arising by expiration of time, or by death, resignation, or otherwise," and that the 1937 act was controlling, but that if not, the amendatory act was nevertheless complied with, it being urged, "the solution of the question as to which act governs depends upon whether the amendatory act is prospective or retrospective."

It is also urged that if the statute be given a retroactive effect that the statute is void because of a defective title, in that it does not state its object in the title.

These questions necessarily involve an interpretation of the statute itself.

Reverting to the 1937 act, we find this provision: "The Commission shall consist of three members, who shall be *appointed by the Governor, by and with the consent of the Legislature,* as soon as possible after the passage and approval of this Act, and thereafter when any vacancy occurs in its membership."

Subsection 2 of the same act provides: "The term of office of the members first taking office after the date of enactment of this Act shall expire, one February 1, 1939, one February 1, 1941, and one February 1, 1943."

■ This language indicates that the legislature had uppermost in its mind keeping the supervisory control in itself, over the appointment of this Commission, as they provide specifically that the members of the Commission *"shall be appointed by the Governor, by and with the consent of the Legislature."* They then provide that this Commission shall be appointed "as soon as possible after the passage and approval of this Act," apparently having in mind that the first Commission would be appointed before the adjournment of that session of the legislature, and with their approval. They then provide that such commission shall be appointed in the same way (by the Governor by and with the consent of the legislature) *"thereafter* when any vacancy occurs in its membership."

They then provide that the terms of office of the members of such Commission taking office after the date of the enactment of this act shall expire on February 1st on each succeeding biennium. This is significant also, as the legislature then convened bi-annually, pursuant to law, on the second Monday in January of the years named for the expiration of the terms of such commissioners, viz. 1939, 1941 and 1943.

■ On April 18, 1940, the Congress, by § 74, Title 48 U.S.C.A. changed the time for the convening of the Legislature from the second Monday in January to the fourth Monday in January, by providing: "The Legislature of

Alaska shall convene * * * on the fourth Monday in January in the year 1941 and on the fourth Monday in January every two years thereafter."

This act had the effect of moving up the date of expiration of the terms of such commissioners two weeks earlier during the legislative session, and during the 1941 session of the legislature it passed the amendatory act, Chap. 40, S.L.A.1941, § 24 of which provides: "Section 24. That paragraph (a) of Section 10(a) (2) be amended by adding thereto the following: 'Upon the expiration of the term of a member the Governor shall submit the name of his successor for confirmation by the Legislature then in session; if the Governor fail to submit such name the incumbent shall continue to hold office and shall continue to perform the duties thereof until his successor shall have been appointed and his appointment confirmed by the Legislature as in this Section provided, and no recess or, interim appointment shall be made in such case.' "

The apparent purpose of this amendment was to clarify and strengthen the original act. In it we find the legislature again providing for the appointment of such Commissioners in exactly the same way as provided for in the original act, viz. "by appointment or nomination by the Governor and confirmation by the legislature," except they at this time added that the Governor shall submit the name of such successor for confirmation by the legislature "then in session"; and, as if in confirmation of its previously declared intention, it further provided:

"If the Governor fail to submit such name [to the Legislature then in session] the incumbent shall continue to hold office and shall continue to perform the duties thereof until his successor shall have been appointed *and* his appointment confirmed by the Legislature *as in this Section provided,*" and, to make sure that no future appointments would be made without its confirmation, it very pertinently added: "and no recess or interim appointment shall be made in such case."

Thus we have the legislature setting out in plain and concise terms the way such Commissioners shall be appointed, and providing, "If the Governor fail to submit such name the incumbent shall continue to hold office and shall continue to perform the duties thereof until his successor shall have been appointed and his appointment confirmed by the Legislature as in this Section provided," followed by the absolute inhibition of any future appointments being made in any other way by the closing recital in said paragraph, providing, "and no recess or interim appointment shall be made in such case."

The plaintiff, however, contends that the vacancy was subject to the provisions of the 1937 act, because the amendatory act of 1941 is prospective in operation, and says, "The solution of the question as to which act governs depends upon whether the amendatory act is prospective or retrospective."

In support of their argument they contend, "An examination of the 1941 act discloses that it is clearly prospective except for the initial clause 'upon the expiration of the term of a member' ".

This clause, they say, "manifestly contemplates future occurrences—the expiration of terms then unexpired," and "that defendant's term, having expired February 1st, 1941, it would be sheer nonsense to declare, nearly two months later, what should be done upon the expiration of his term," and say, "It is inconceivable that the legislature intended the clause 'upon the expiration of the term of a member' to apply to unexpired terms."

This is a very clever and ingenuous argument, but not in keeping with the canons of construction laid down by the courts for the construction of statutes, and there might be some validity to the argument of plaintiff if we were permitted to consider the initial words of the amendatory statute alone. There are, however, certain fundamental rules laid down by the courts for our guidance, among which are:

■■■■■■

"As the intention of the legislature, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the state, to the intention or purpose of the legislature as expressed in the statute." ˌ

"The intention of the legislature is to be obtained primarily from the language used in the statute. The court must impartially, and without bias, review the written words of the act, being aided in their interpretation by the canons of construction. Where the language of a statute is plain and unambiguous, there is no occasion for construction, even though other meanings could be found; and the court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning, or the court would be assuming legislative authority." 59 C.J. § 568, pp. 952–957.

■■■■■ These fundamental rules of construction are further extended by another rule, which provides:

"While the intent of the legislature is to be found primarily in language of the statute, where such language is vague, ambiguous, or uncertain, the court may look, not only to its language but to the subject matter of the act, the object to be accomplished, or the purpose to be subserved * * * or various extrinsic matters which throw some light on the legislative intent." Id., § 570, pp. 958, 960.

"The intent or purpose of the legislature, the object of the statute must be kept in mind, and such construction placed upon it as will, if possible, effect its purpose, and render it valid * * * rather than one which would defeat it." Id., § 571, pp. 961–963.

And in determining their meaning: "Word used in a statute will be determined from the character of its use, words in common use are to be given their natural, plain, ordinary and commonly understood meaning, in the absence of any statutory or well established technical meaning, unless it is plain from the statute that a different meaning was intended, or *unless such construction would defeat the manifest intention of the legislature.* The words are to be interpreted with due regard to the subject matter of the statute and its purpose, and it may be necessary, in order to give effect to the legislative intent, to extend or restrict the ordinary and usual meaning of words; * * * and their usual meaning may be disregarded when it is evident that they were incorrectly used, or used in another sense. So also uncertain or ambiguous words will be construed so as, if possible, *to produce a reasonable result in harmony with the purpose of the act."* Id., § 577, pp. 974–978.

Furthermore, all of the rules of construction require:

"In construing a statute, the legislative intention is to be determined from a general consideration of the *whole act* with reference to the subject matter to which it applies and the particular topic under which the language in question is found, *and the intent as deduced from the whole will prevail over that of a particular part considered separately."* Id., § 594, pp. 993–995.

"To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." Id., § 595, pp. 995–998.

And that "In the construction of a particular statute or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times and contain no reference to one another." Id., § 620, pp. 1043–1047.

It should also be borne in mind that the statute which we are particularly called upon to construe is an

amendment to an existing statute, and that the rule in this regard is that:

"Amendments are to be construed together with the original act to which they relate as constituting one law, and also together with other statutes on the same subject, as part of a coherent system of legislation &ast; &ast; &ast;. The provisions of the amendatory and amended acts are to be harmonized, if possible, so as to give effect to each, and leave no clause of either inoperative." Id., § 645, pp. 1094, 1095.

"The amendatory and the original statutes are to be read together in seeking to discover the legislative will and purpose, and if they are susceptible of two constructions, one of which gives effect to the amendatory act while the other will defeat it, the former construction should be adopted." 25 R.C.L. § 291, p. 1067; Burlington C. & N. R. Co. v. Dey, 82 Iowa 312, 48 N.W. 98, 12 L.R.A. 436, 31 Am. St.Rep. 477.

"Obviously, in order that effect may be given to every part of an act in accordance with the legislative intent, all the language of the act must be considered and brought into accord." 25 R.C.L. § 247, p. 1006.

Read in the light of these rules of construction we believe it to have been the intention of the legislature in the 1937 act to provide for the appointment of the Commissioners therein provided for by requiring that the Governor submit the names of such Commissioners to the legislature for its approval, but finding that their actions in that regard had proven ineffectual they passed the amendment of 1941 wherein they again asserted the same purpose and apparently sought to nail it down with the provision that, hereafter "no recess or interim appointment shall be made in such case."

The fact that they may have used some loose language in the opening part of the amendatory act loses its validity and whatever uncertainty it may have by reading it alone, when construed as a part of the act taken as a whole. Furthermore, the rules of construction require that such statutes

should be construed as a whole and every part thereof made effective where possible, whereas the construction suggested by plaintiff would necessitate ignoring completely the closing words of the amendatory act that hereafter "no recess or interim appointment shall be made in such case," which the Court has no right or authority to do.

 The same arguments would dispose of plaintiff's second contention: "The provisions of the amendatory act were complied with in filling the vacancy."

The plaintiff also contends: "There is another reason why the statute can not be given a retrospective operation. Our organic act, (Sec. 474, C.L.A.1933) provides, 'That no law shall embrace more than one subject, which shall be expressed in its title.' "

I do not find any merit in this argument. It should be borne in mind that this is an amendatory act and that the title thereto reads: "An Act to amend Chapter Four of the Extraordinary Session Laws of Alaska, 1937, as amended by Chapters 1 and 51 Session Laws of Alaska, 1939, relating to the Unemployment Compensation Law, by amending Sections * * * 10(a) (2) * * * and to declare an emergency."

This is a sufficient title for the amendatory act.

"A statute is not rendered void for multifariousness under a constitutional provision prohibiting an act from embracing more than one subject or object, by the fact that it enacts new law and also expressly amends a prior statute on the same subject or by the fact that it amends a prior statute in two or more particulars." 59 C.J. § 386, p. 804.

"Under a constitutional provision requiring the subject of a statute to be expressed in its title, the title is of the nature of a label, its purpose being to give notice of the subject of the act. So a title must fairly set forth the subject of * * * the legislative intent and purpose to those interested therein or affected by the terms of the act without the aid of any suggestions or inferences which may be drawn from knowledge de hors the language used.

"It is not required, however, that the title be an index or synopsis of the contents of the act, or set out the details thereof, but it need only indicate the general contents and scope of the act, and if it gives reasonable notice thereof it is sufficient. It is only to the contents of a statute that the title is required to point, and not to its results; and the incidental operation of the statute upon subjects other than that with which it expressly deals need not be expressed." 59 C.J. § 387, pp. 804, 805, 806.

"A title to an act which shows that the act is one amendatory of, or supplemental to, specified prior legislation, without further reference to the matter with which the act deals or any expression of the mode or particulars of the amendment or supplement, sufficiently complies with such a constitutional provision; so under such a title referring to a prior statute any matter may be validly included which is properly connected with, or germane to, the subject expressed in the title of the original act." Id., § 400, pp. 816, 817, 818, and notes and cases cited in notes 78½–79.

In the interest of brevity I have purposely refrained from citing specific cases in support of the rules quoted, but these rules are so well established and so well supported by the weight of authority that I have contented myself with citing the text of the digest only. There is, however, one case so strongly in point that I wish to call particular attention to it. That case is United States v. Fisher, 109 U.S. 143, 3 S.Ct. 154, 155, 27 L.Ed. 885.

There, the appellee, Fisher, held the office of Chief Justice of the Territory of Wyoming from February 4th, 1876, to November 26, 1879. Up to and including June 30, 1877, he was paid a salary at the rate of $3,000 per annum. From June 30, 1877, up to and including November 26, 1879, he was paid and received compensation at the rate of $2,600 per annum. The appellee contending that he was entitled to a salary at the rate of $3,000 per annum for his whole term of service, brought this suit in the Court of Claims to recover the difference between what his salary at that rate

would have been from June 30, 1877, up to and including November 26, 1879, and the amount actually paid him for that period. The Court of Claims rendered a judgment pro forma in his favor, from which the United States appealed to the United States Supreme Court.

The question thus raised involved the interpretation of two acts of Congress, the first of which provided: "The salaries of the chief justices and associate justices of the Territories of * * * Wyoming * * * shall be three thousand dollars each per annum." 16 Stat. 152.

This statute remained in force until Congress, on March 3, 1877 passed an act entitled, "An act making appropriations for the legislative, executive, and judicial expenses of the Government for the year ending June thirtieth eighteen hundred and seventy-eight and for other purposes." 19 Stat. 294.

This act declared as follows: "That the following sums be, and the same are hereby, appropriated out of any money in the Treasury not otherwise appropriated, in full compensation for the service of the fiscal year ending June thirtieth eighteen hundred and seventy eight, for the objects hereinafter expressed."

Acts similar to the last mentioned act were passed, applying to appropriations for similar purposes for the fiscal year ending June 30, 1879 and 1880.

The Court noted that: "With the exception of the words 'in full compensation,' the opening clause of these acts is substantially the same as that used in all other appropriation acts of every description since the foundation of the government."

Upon this state of the law the question is presented whether from June 30, 1877, up to and including November 26, 1879, the appellee was entitled to a salary at the rate of $3,000 per annum or at the rate of $2,600 per annum. The contention of appellee is that under the Act of June 17,

1870, he was entitled to a salary of $3,000, notwithstanding the subsequent legislation above referred to.

The Court said: "We cannot concur in this view. The act of June 17, 1870, fixing the annual salary of appellee at $3,000 was not a contract that the salary should not be reduced during his term of office. * * * Nor was there any provision of the constitution which forbade a reduction. * * * Congress, therefore, could, without the violation of any contract, reduce the salary of appellee, and had the constitutional power to do so."

The Court then continued:

"Certain well-settled rules of interpretation are applicable to this case. One is that a legislative act is to be interpreted according to the intention of the legislature apparent upon its face, * * * another, that, if possible, effect must be given to every clause, section, and word of the statute (Bac.Abr.St. I. 2; Powlter's Case 11 Coke 29 A. 34a; Potter's Dwarris 194; Opinion of the Justices, 22 Pick. [Mass.] 571); and * * *

"That where two acts are in irreconcilable conflict the later repeals the earlier act, even though there be no express repeal. McCool v. Smith, 66 U.S. 459, 1 Black 459 [17 L.Ed. 218]; United States v. Tynen, 11 Wall. 88 [20 L.Ed. 153]; Red Rock v. Henry, 106 U.S. 596, 1 S.Ct. 434 [27 L.Ed. 251]; United States v. Irwin [Fed.Cas. No. 15,445], 5 McLean 178; West v. Pine [Fed.Cas. No. 17,423] 4 Wash.C.C. 691; Britton v. Commonwealth, 1 Cush. [Mass.] 302.

"Applying these rules, we think that the appropriation acts above referred to, so far as they concern the question in hand, are susceptible of but one meaning. Placing side by side the two clauses of the statute which relate to this controversy, their plain effect is to appropriate $2,600 for the salary of the appellee for one year, and to declare that the sum so appropriated shall be in full compensation for his services as chief justice for the year specified. There is no ambiguity and no room for construction. We cannot adopt

the view of appellee unless we eliminate from the statute the words 'in full compensation,' which congress, abandoning the long-used form of the appropriation acts has, ex industria, inserted. Our duty is to give them effect. When congress has said that the sum appropriated shall be in full compensation of the services of the appellee, we cannot say that it shall not be in full compensation, and allow him a greater sum. Not only do the words of the statute make the intention of congress manifest, but that intention is plainly repugnant to the former statute, which fixes the early salary of the chief justice at $3,000. It is impossible that both acts should stand. No ingenuity can reconcile them. The later act must therefore prevail, and the earlier act must, for the time covered by the appropriation acts above referred to, be considered as suspended. The result of these views is that the judgment of the court of claims, which gives the appellant a salary at the rate of $3,000 per annum from June 30, 1877, to November 26, 1879, must be reversed."

This case is so much in point with the case under consideration that we could therefrom sustain most of the conclusions already arrived at in construing the statute in question; nor do we know of any established rules to the contrary.

We have examined the authorities cited by the plaintiff, and with due regard to his ability and his able presentation of them we cannot agree with his interpretation of them.

"It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every section, clause, word or part of the act, (and) in applying the rule it frequently occurs that a particular construction of a provision which the court is urged to adopt cannot be sanctioned because, according to the view suggested, certain other provisions would thereby be rendered unnecessary or nugatory, and it should not be presumed that any provision is redundant or useless." R.C.L. p. 1004, § 246.

We therefore hold that the appointment of John L. Cauble was made without authority of law, in that the statute in question (§ 10, Ch. 4, E.S.L.A.1937, as amended by § 24, Ch. 40, S.L.A.1941) is the only law governing such matters, and that it was the intention of the legislature thereby to require, and said statutes do require, that all appointments made subsequent to its passage and approval should be made by the Governor and confirmed by the legislature before they become valid, and that the defendant, Richard E. Hardcastle, having been appointed for a definite term, to-wit until February 1, 1941, and there being no existing law authorizing members of the Commission holding over beyond their specified terms, and the statute forbidding recess or interim appointments, the Court holds that Richard E. Hardcastle ceased to be a member of said Commission on the expiration of his appointive term of February 1st, 1941, and that no legal appointment having since been made, the office previously held by him is, and since February 1, 1941 has been, vacant.

An order may therefore be drawn and presented in accordance with this opinion.