Mary BRIDGES, Petitioner,

v.

ALASKA HOUSING AUTHORITY, a public corporate authority, Elmer Gagnon, and M. G. Gebhart, Respondents.

No. 16.

Supreme Court of Alaska.

Dec. 22, 1959.

Rehearing Denied Feb. 17, 1960.

Robert A. Parrish, Fairbanks, for appellant.

Henry J. Camarot, Fairbanks, for respondents.

Before NESBETT, C. J., and HODGE and DIMOND, JJ.

DIMOND, Associate Justice.

The question for decision is whether the Alaska Housing Authority, in the exercise of its power of eminent domain, may use a declaration of taking.

On June 9, 1958, the Authority filed a complaint for the purpose of condemning certain real property of petitioner in connection with a slum clearance and urban redevelopment program within the boundaries of what is designated as "Urban Renewal Project T. A. R-7", in the City of Fairbanks, Alaska. On the same day it also filed an instrument entitled "Declaration of Taking", asserting that the right to take petitioner's property in this manner had been conferred on the Authority by Section 57-7-1, ACLA 1949, Section 8 of Chapter 105, SLA 1951 [Section 40-7A-9, ACLA 1949 Cum.Supp.], Chapter 90, SLA 1953 [1], and Chapter 122 SLA 1955 [Sections 16-1-103, 16-1-104, Cum.Supp.].

Petitioner moved to dismiss the complaint and the action, to strike the summons and quash the service of summons, and to strike the declaration of taking. In a memorandum opinion filed on August 23, 1958, Judge J. L. McCarrey, Jr., erroneously held that the question as to the declaration of taking had been raised on the motion to dismiss, rather than on the motion to strike; and considering that point only, said:

"The Court feels that the meaning of the statute [2] is clear though perhaps not well articulated, and that the Alaska Housing Authority may use Sections 57-7-24 through 57-7-29 ACLA 1949 Supp. to conduct condemnation proceedings.

"The Territorial Legislature has made a valid attempt to provide for future contingencies in the ever changing field of urban renewal and eminent domain. Where the legislative intent is clear, it should be followed.

"Therefore, the motion to dismiss is denied."

Petitioner was ordered to give possession of her property to the Authority not later than October 2, 1958. On March 30, 1959, a writ of assistance was issued in aid of such order granting possession. Petitioner moved to quash the writ, but this was denied on May 1, 1959—the district court stating:

"* * * it is the opinion of this Court that the Order aforesaid involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation."

Petitioner asks us to review the lower court's determinations under Rules 23-33 of the Rules of this Court. Respondents have not filed a memorandum in opposition "disclosing any matter or ground why the relief sought by the petition should not be granted." [3]

■ We grant the petition. The decision that the Authority may avail itself of a declaration of taking in eminent domain is of such importance as to justify deviation from the normal appellate procedure by way of appeal from a final judgment and to require the prompt attention of this court.

The concept of a declaration of taking in connection with eminent domain was first brought into existence in Alaska in

I. No reference is made in the declaration of taking to Ch. 138, SLA 1955 which amended Ch. 90, SLA 1953. These acts, as further amended by Ch. 146, SLA 1959, now appear in the Alaska Compiled Laws Cumulative Supplement as Sections 57-7-24 to 57-7-29.

2. Sec. 40-7A-9, Cum.Supp.

3. Rule 29(a), Rules of the Supreme Court.

1953 when the Territorial legislature provided that—

"In any proceeding instituted by and in the name of the Territory of Alaska involving the acquisition of any real property or any interests therein or any easement for public highway purposes the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the Territorial authority empowered by law to acquire the real property or any interests therein or any easement described in the petition, declaring that said real property or any interests therein or any easement is thereby taken for the use of the Territory of Alaska." [4]

The statute prescribed what must be contained in the declaration, and then stated that when it was filed and the amount of estimated compensation deposited with the court—

" * * * title to the real property in fee simple absolute * * * shall vest in the Territory of Alaska, and * * * shall be deemed to be condemned and taken for the use of the Territory of Alaska, and the right to just compensation for the same shall vest in the persons entitled thereto." [5]

The court was to then fix the time within which and the terms upon which possession of the property must be surrendered to the condemning authority, which could not be before the expiration of the time allowed a defendant to move to strike the declaration and dismiss the suit if he wished to raise any question with respect to the validity of the taking.[6] Failure to file such a motion constituted a waiver of the right to challenge the validity of the taking.

4. Ch. 90, SLA 1953, Sec. 1.

5. Ibid.—secs. 2 and 3.

6. Ibid.—Secs. 4, 6.

7. Ch. 138, SLA 1955.

8. Ch. 122, SLA 1955.

In 1955 this authority was extended so that the Territory could utilize a declaration of taking, not only for highway purposes, but "for any purpose for which the Territory is authorized the power of eminent domain." [7] In addition, at the same legislative session, cities of the first class were permitted to use a declaration of taking—

"In the exercise of eminent domain for street or highway, school, sewer, water, telephone, electric, other utility, and slum clearance purposes and use granted to cities of the first class * * *" [8]

The history of this statute shows that the legislature refused to extend such authority to other than first class cities, and in addition, limited the power to the purposes specified rather than to any purpose for which such cities were authorized the use of eminent domain.[9]

Nothing further was done until four years later when, in 1959, the first State legislature permitted the use of a declaration of taking by any public utility district or school district.[10] But at the same legislative session, the House of Representatives indefinitely postponed a bill which would have extended this power to—

" * * * any person, firm, municipal corporation, association or corporation authorized to transact business in the state for the purpose of constructing, maintaining, or operating electric light and power plants, water plants, sewer systems, telephone or other public utilities * * *" [11]

When the Alaska Housing Authority was created in 1945, for the purpose of undertaking slum clearance and providing low cost housing projects, there was conferred upon it the power—

9. Journal of the House—Alaska Legislature—1955.

10. Ch. 146, SLA 1959.

11. Committee Substitute for House Bill 126—House Journal, p. 949.

" * * * to * * * acquire by eminent domain under Sections 57–7–1 to 57–7–23 of the Compiled Laws of Alaska 1949, or otherwise, real and personal property * * * " [12]

In 1949 the scope of the Authority's powers was enlarged so as to encompass the construction of what were termed "moderate cost and rental dwelling units." The power of eminent domain was again referred to—Section 12 of this act permitting the Authority—

" * * * to acquire by * * * condemnation, or otherwise, such lands * * * as may be necessary or desirable for the establishment, construction and operation of said housing. * * * " [13]

The Slum Clearance and Redevelopment Law was enacted in 1951.[14] Its purpose was to provide for the clearance of slum and blighted areas and to develop them for more beneficial uses. Section 5 of the act, entitled "Powers of the Authority", provides in subdivision (c) that the Alaska Housing Authority shall have the power—

"Within its area of operation, to * * * acquire by * * * eminent domain or otherwise, any real or personal property or any interest therein, together with any improvements thereon, necessary, or incidental to a redevelopment project * * * "

Section 8, entitled "Eminent Domain", says this:

"The Authority shall have the right to acquire by the exercise of the power of eminent domain any real property which it may deem necessary within the boundaries of a redevelopment project or for its purposes under this Act after the adoption by it of a resolution declaring that the acquisition of the real property described

therein is necessary for such purposes. The Authority may exercise the power of eminent domain in the manner provided in Sections 57–7–1 to 57–7–23 of the Compiled Laws of Alaska, 1949, and acts amendatory thereof or supplementary thereto, or it may exercise the power of eminent domain in the manner now or which may be hereafter provided by any other statutory provisions for the exercise of the power of eminent domain. Property already devoted to a public use may be acquired in like manner, provided that no real property belonging to the municipality or the Territory may be acquired without its consent."

The right to use a declaration of taking has not been specially granted to the Alaska Housing Authority, as it has been to the Territory (now State) of Alaska, to first class cities, and to school and public utility districts. The right did not exist at all in 1951 when for the last time the legislature spoke of the exercise of eminent domain by the Authority.[15] And respondent is not the Territory or State of Alaska. It is a public corporate authority, and no more the "Territory" or "State" than is a city or school or public utility district. This is clear from the congressional enabling legislation and from the acts of the Territorial legislature creating the Authority and giving it the powers that it has.[16]

■ If the power exists at all, it would be by implication, and then only from a liberal reading of the language of Section 8 of Chapter 105, SLA 1951, where the legislature, after having granted the power of eminent domain to the Authority, said that it might exercise such power—

" * * * in the manner provided in Sections 57–7–1 to 57–7–23, of the Compiled Laws of Alaska, 1949, and acts amendatory thereof or supplementary

12. Sec. 40–7–6, ACLA 1949.

13. Ch. 13, SLA 1949.

14. Ch. 105, SLA 1951.

15. Ch. 105, SLA 1951.

16. 48 U.S.C.A. § 480 et seq.; Secs. 40–7–2, 40–7–6, ACLA 1949; Ch. 105, Sec. 3, SLA 1951 [Sec. 40–7A–4, ACLA 1949 Cum.Supp.].

thereto, or it may exercise the power of eminent domain in the manner now or which may be hereafter provided by any other statutory provisions for the exercise of the power of eminent domain."

But this is not enough. The incorporation by reference of amendatory and supplementary acts and other statutory provisions which might be enacted later may not be construed as conferring on the Authority any additional or different power of eminent domain. The use of the words "manner provided" must be held to refer to matters of procedure in the exercise of a power otherwise expressly given.

It apparently was not intended that the declaration of taking power should merely supplement the procedural aspects of the then existing statutory provisions on eminent domain. If it had been, then it would have been enough to simply amend one or more of Sections 57–7–1 to 57–7–23 and say that those who have the power of eminent domain may exercise it by way of a declaration of taking.

But the legislature chose not to do this. The history of the statutes on this subject show that the legislature was particular in selecting those upon whom the power would be conferred and particular also in confining this authority within definite limits.

The declaration of taking is a power of eminent domain, and not only a manner of exercising a power otherwise conferred. More than procedure is involved; substantive rights are affected.

Under Sections 57–7–1 to 57–7–23 the condemning authority is not able to take possession of a defendant's property until " * * * after the report and assessment of damages by the commissioners has been made and filed in the court * * *." [17] And before that event could take place, there had to be a complaint filed, a summons and order to show cause issued, and apparently, a determination by the court that the use for which the property was sought to be appropriated was a public use, or that the public interests required the taking of the lands sought to be condemned.[18]

In addition, Section 57–7–6 appears to require the court, prior to the time that the property may be taken from a defendant, to make specific findings (1) that the use to which the property is to be applied is a use authorized by law, and (2) that the taking of the property is necessary to such use. The Court of Appeals for the Ninth Circuit has construed this section of the statute as requiring the court to find those facts "before condemnation", and has held that—

"It is upon findings so made that there is established a basis for further proceedings. The findings constitute the decision of the court upon the vital question of whether or not the property sought to be taken can be condemned at all." [19]

Finally, the third paragraph of Section 57–7–27, Cum.Supp. states that the right to take possession and title in advance of final judgment—

" * * * shall be *in addition to any right, power, or authority* conferred by the condemning agency under which such proceedings may be conducted, and shall not be construed as abrogating, limiting, or modifying any such right, power or authority." (Emphasis added.)

And when the right to use a declaration of taking was extended to first class cities, it was provided that a city could proceed in the same manner "and with the same power" as provided for the use of a declaration of taking by the Territory of Alaska.[20]

A declaration of taking enlarges the rights of the condemning authority and re-

17. Sec. 57–7–21, ACLA 1949.

18. Secs. 57–7–9, 57–7–10, 57–7–12, ACLA 1949.

19. Van Dyke v. Midnight Sun Mining & Ditch Co., 9 Cir., 1910, 177 F. 85, 87, 3 Alaska F. 458.

20. Ch. 122, Sec. 2, SLA 1955 [Sec. 16–1–104, Cum.Supp.].

duces those of the landowner. Upon the filing of the declaration and a deposit of the amount of compensation estimated to be due, title to the real property vests in the condemning agency and "such real property * * * shall be deemed to be condemned and taken for the use of the condemning agency * * *." [21] And then, without the necessity of awaiting the report of the commissioners and assessment of damages, the court is given the power "to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession" to the condemning authority.

 We conclude, therefore, that the Alaska Housing Authority may not use a declaration of taking. We say this—not only with acknowledgment of the rule that a grant of power of eminent domain is to be strictly construed against the condemning party and in favor of the property owner [22]—but because a logical interpretation of all of the statutes on this subject and their legislative history requires this result.

The petition is granted and the following orders in Civil Action No. 10,017 [23] are reversed:

(1) The order denying petitioner's motion to dismiss, contained in the memorandum opinion of Judge J. L. McCarrey, Jr., filed on August 23, 1958.

(2) The "Order Granting Possession to Plaintiff", filed September 12, 1958, so far as it relates to petitioner, Mary Bridges.

(3) Paragraph "(1)" of the "Final Order Denying Defendant Mary Bridges' Motion to Quash Writ of Assistance", filed May 1, 1959.

In a separate action [24] petitioner has sought an injunction and damages against the respondents. On November 12, 1959, the district court entered an order staying and abating all proceedings in that case until final determination in the condemnation action (No. 10,017) or until such time as may be otherwise ordered by a successor court or an appellate court having jurisdiction over the proceedings. Petitioner asks us to review that order also and to reverse it. In view of the conclusions reached here, the petition is denied.

The cases are remanded to the district court for proceedings in conformity with this opinion.

### On Petition for Rehearing

In an opinion filed December 22, 1959, this court held that the right granted the Alaska Housing Authority to exercise the power of eminent domain did not include the right to use a declaration of taking. In a petition for rehearing, respondents asked us to reconsider this determination and to set aside or reverse the opinion.

In support of the argument that a declaration of taking involves nothing more than a method or procedure by which the power of eminent domain might be exercised, respondents point to the Notes of the Advisory Committee on the Federal Rules of Civil Procedure, 28 U.S.C.A., where it was stated that Rule 71A was not intended to and did not supersede the general declaration of taking act [40 U.S.C.A. §§ 258a–258e], which was a—

"* * * supplementary condemnation statute, permissive in its nature and designed to permit the prompt acquisition of title by the United States, pending the condemnation proceeding, upon a deposit in court. * * *" Title 28 U.S.C.A., Rule 71A, 1959 Cumulative Annual Pocket Part, p. 358].

21. Sec. 57–7–26, Cum.Supp., as amended by Ch. 146, SLA 1959.

22. Sutherland Statutory Construction, 3rd Ed., Vol. 3, Sec. 6504, pp. 249 et seq. Cf. Botts v. Southeastern Pipeline Co., 1940, 190 Ga. 689, 10 S.E.2d 375; Northern Mining & Trading Co. v. Alaska Gold Recovery Co., 9 Cir., 1927, 20 F.2d 5, 5 Alaska F. 351, 357.

23. Alaska Housing Authority, Plaintiff v. Certain Parcels of Land in Fairbanks Townsite, Alaska, etc.—and Mary Bridges, Defendants.

24. Mary Bridges, Plaintiff v. Alaska Housing Authority, a public corporation, and Elmer Gagnon, and M. G. Gebhart, Defendants, Civil Action No. 10,720.

Respondents conclude from this that the declaration of taking merely accelerates the time when the conveyance of title and possession shall take place, that it is simply ancillary and subordinate to the main condemnation proceeding, and that it is not, therefore, an eminent domain power.

It is interesting to note, however, that the Advisory Committee made a further report on this matter in March 1951. There it was said:

"We call attention to the fact that the proposed rule does not contain a provision for *the procedure to be followed in order to exercise the right* of the United States to take immediate possession or title, when the condemnation proceeding is begun.

\* \* \* \* \* \*

"The Advisory Committee considered whether the *procedure for exercising the right* should be specified in the rule and decided against it, as the procedure now being followed seems to be giving no trouble, and to draft a rule to fit all the statutes on the subject might create confusion." [Emphasis added] Title 28 U.S.C.A., Rule 71A, 1959 Cumulative Annual Pocket Part, pp. 355–356].

From this it would be reasonable to assume that in the opinion of the Advisory Committee the right to use a declaration of taking was not just a matter of procedure.

▇▇▇ Respondents claim that because the petition for review was not filed within the time limits prescribed by Rule 27, that this court did not have jurisdiction to review the orders which were the subject of its opinion and judgment. The question of jurisdiction is not involved. The time within which a petition for review is to be filed is regulated by a rule of this court, and not by statute. When the rules were adopted, notice was given that they were designed to facilitate business and advance justice, and that they might be relaxed or dispensed with where a strict application would be unfair. Rule 52. It was stated in the opinion in this case that the question involved here was of such importance as to justify deviation from the normal appellate procedure by way of appeal from a final judgment and to require the prompt attention of this court. This question was also of such importance as to justify deviation in this instance from a rigid adherence to Rule 27.

A substantial portion of respondents' brief is devoted to the argument that their complaint was sufficient because compliance with Rule 71A, Federal Rules of Civil Procedure, was all that was required. That question was not passed upon by this court. The opinion makes it clear that the only question decided was that the Alaska Housing Authority did not have the right to use a declaration of taking.

There are other matters discussed in respondents' extensive brief. We have reviewed them carefully and find that all of them had been considered by the court before the decision in this case was reached.

The petition for rehearing is denied.