**ARCO PIPELINE COMPANY et al.,
Petitioners,**

v.

**3.60 ACRES, MORE OR LESS, etc., and
Jackie J. Stewart, et al., Respondents.**

No. 2419.

Supreme Court of Alaska.

Aug. 1, 1975.

Karl L. Walter, Jr., of Groh, Benkert & Walter, Anchorage, for petitioners.

Jackie J. Stewart, in pro. per.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, and BURKE, JJ.

## OPINION

ERWIN, Justice.

Petitioners are the owners and constructors of the Trans-Alaska Pipeline. In order to facilitate the prompt completion of this monumental and historic project, the State of Alaska in AS 38.35.130 authorized a delegation of its power of eminent domain and permitted thereby the use by petitioners of a declaration of taking to condemn real property in the state for right-of-way purposes.[1] Pursuant to this grant, on July 15th, 1974, petitioners filed an eminent domain complaint and a declaration of taking seeking to condemn a 3.6 acre right-of-way and easement—100 feet wide and approximately 1400 feet long—across the 80 acre homestead of respondent Stewart in the area of Delta Junction. The sum of $700.00 was deposited in the court as estimated compensation for the taking. Respondent Stewart answered and asserted that condemnation of the respondent's property was not necessary since petitioners had public lands available to them which were suitable for the pipeline construction.

A consolidated hearing concerning this as well as other parcels in the same area was conducted on September 20 and November 1, 1974. At the hearing petitioners offered expert testimony on the subjects of route selection and design criteria and the necessity of the taking of respondent's property. The testimony revealed that in the opinion of the pipeline company the route selected was optimal in satisfying design and construction criteria and maintained the straightest line possible, one having the fewest number of angles detrimental to the proper flow of crude oil. The expert testimony further indicated that core drilling of the property had revealed that the soil was suitable for burying the pipeline. Respondent, on the other hand, offered no testimony questioning the efficacy of the route selected, but provided instead evidence that there were state and university lands north of respondent's property over which the pipeline could be constructed.

After hearing the testimony and after additional briefing the trial court denied the taking, concluding that petitioners had failed to demonstrate that they had considered routing the line over public lands and

---

1. AS 38.35.130 of the Right-of-Way Leasing Act provides in part:

    (a) The lessee may, if the commissioner delegates the function to it, condemn, by declaration of taking, under AS 09.55.420–09.55.450, real property and acquire leases of or easements or rights-of-way on lands in the state required for right-of-way purposes for a pipeline subject to the lease on behalf of and as agent for the state in which title to or interest in the land shall vest.

thereby avoid private injury. The court ruled that where the option of alternative routing over public land exists petitioners have the burden of submitting convincing evidence that they have at least considered the alternative routing across state land to avoid private injury, and that they must give cogent reasons for their ultimate selection.

Following the decision a petition for review was filed in the Supreme Court and an order granting such review was entered on February 18, 1975.

Before discussing the issues raised in this review, it should be pointed out that the trial court specifically found that petitioners have been given statutory authority by the state of Alaska to take property for the construction of the Trans-Alaska Pipeline; it also apparently found that petitioners had been properly delegated this power and had otherwise complied with the applicable statutes governing the exercise of the power of condemnation by way of declaration of taking. These conclusions are supported on the record [2] and have not been contested herein by respondent. They are therefore not at issue in this Petition for Review.

The specific issue presented here for review is whether or not the trial court was correct in its determination that for purposes of the exercise of the power of condemnation by way of a declaration of taking petitioners have the burden of showing consideration of possible alternate pipeline routes and of providing sufficient proof of the necessity of the particular route selected. The resolution of this question necessarily entails an analysis of the statutes governing the use of a declaration of taking by petitioners and, correlatively, an inquiry into the question of the proper scope of judicial review in such proceedings.

AS 09.55.420–09.55.450,[3] governing the use of a declaration of taking in this state,

2. We note that the record reveals that on July 2, 1974, the Commissioner of the Department of Natural Resources executed a Delegation of Authority under the statute and specifically authorized thereby petitioners' use of a declaration of taking to condemn the Stewart property.

3. The pertinent provisions of these statutes read as follows:

Sec. 09.55.420. *Declaration of taking by state or municipality.* (a) Where a proceeding is instituted under §§ 240–460 of this chapter by the state, it may file a declaration of taking with the complaint or at any time after the filing of the complaint, but before judgment. . . .

Sec. 09.55.430. *Contents of declaration of taking.* The declaration of taking shall contain

(1) a statement of the authority under which the property or an interest in it is taken;

(2) a statement of the public use for which the property or an interest in it is taken;

(3) a description of the property sufficient for the identification of it;

(4) a statement of the estate or interest in the property;

(5) a map or plat showing the location of the property;

(6) a statement of the amount of money estimated by the plaintiff to be just compensation for the property or the interest in it.

Sec. 09.55.440. *Vesting of title and compensation.* (a) Upon the filing of the declaration of taking and the deposit with the court of the amount of the estimated compensation stated in the declaration, title to the estate as specified in the declaration vests in the plaintiff, and that property is condemned and taken for the use of the plaintiff, and the right to just compensation for it vests in the persons entitled to it. The compensation shall be ascertained and awarded in the proceeding and established by judgment. . . .

Sec. 09.55.450. *Right of entry and possession.* (a) Upon the filing of the declaration of taking and the deposit of the estimated compensation, the court may, upon motion, fix the time during which and the terms upon which the parties in possession are required to surrender possession to the petitioner. However, the right of entry shall not be granted the plaintiff until after the running of the time for the defendant to file an objection to the declaration of taking. . . .

. . . . .

(c) The right to take possession and title in advance of final judgment where a declaration of taking is filed is in addition to any other rights to take possession provided in §§ 240–460 of this chapter.

constitute the authority for petitioners' taking in this case.[4] In *Bridges v. Alaska Housing Authority,* 349 P.2d 149 (Alaska 1959), the only case in which this court has engaged in a comprehensive analysis of the general import of these provisions in the context of the exercise of eminent domain in this state, it was observed that

> [a] declaration of taking enlarges the rights of the condemning authority and reduces those of the landowner. Upon the filing of the declaration and a deposit of the amount of compensation estimated to be due, title to the real property vests in the condemning agency and "such real property * * * shall be deemed to be condemned and taken for the use of the condemning agency * * *." And then, without the necessity of awaiting the report of the commissioners and assessment of damages, the court is given the power "to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession" to the condemning authority.[5]

The Court further concluded that

> [i]t apparently was not intended that the declaration of taking power should merely supplement the procedural aspects of the then existing statutory provisions

on eminent domain. . . . The declaration of taking is a power of eminent domain, and not only a manner of exercising a power otherwise conferred. More than procedure is involved; substantive rights are affected.[6]

We take this opportunity to observe that changes in the language of the declaration of taking provisions since *Bridges* have been—at least for purposes of this review—minor, and we consequently recognize the applicability of the *Bridges* analysis to the case at hand. In *Bridges,* however, we were not called upon to consider the effect of the declaration of taking provisions in light of other statutes which govern eminent domain proceedings in general. It is this interrelationship which is at the crux of this review.

The trial court, in holding that petitioners were obliged to demonstrate in convincing terms the necessity of selecting one route as opposed to other alternatives which might arguably minimize private injury, premised its ruling upon the conclusion that the petitioners' action was governed by the same rules which apply to *any* governmental exercise of the power of eminent domain. Obviously looking to such statutes as AS 09.55.260 through 09.55.-280, and 09.55.300,[7] the court quite reasonably concluded that it was therefore

---

4. Note 1 *supra.*

5. 349 P.2d at 153–54 (footnote omitted).

6. *Id.* at 153.

7. These sections provide in pertinent part:
   Sec. 09.55.260. *Private property subject to be taken.* The private property which may be taken under §§ 240–460 of this chapter includes

   .         .         .         .         .

   (5) all rights-of-way for any of the purposes mentioned in § 240 of this chapter, and the structures and improvements on the rights-of-way, and the lands held and used in connection with them shall be subject to be connected with, crossed, or intersected by another right-of-way or improvements or structures on them; they shall also be subject to a limited use, in common with the owner, when necessary; but the uses, crossings, intersections, and connec-

tions shall be made in the manner most compatible with the greatest public benefit and least private injury;

.         .         .         .         .

Sec. 09.55.270. *Prerequisites.* Before property can be taken, it shall appear that

.         .         .         .         .

(2) the taking is necessary to the use;

.         .         .         .         .

Sec. 09.55.280. *Entry upon land.* In all cases where land is required for public use, the state, the public entity, or persons having the authority to condemn, or its agents in charge of the use may enter upon the land and make examination, surveys, and maps and locate the boundaries; but it shall be located in the manner which will be most compatible with the greatest public good and the least private injury, and subject to the provisions of § 300 of this chapter. . . .

the province of the court to require the condemnor to prove to the satisfaction of the court that the selected route is consistent with the greatest public benefit and to the least private injury.

However, a consideration of the clear legislative intent that the prompt completion of the pipeline be facilitated under the Right-of-Way Leasing Act,[8] our reading and analysis of certain critical provisions governing the effect of the use of a declaration of taking, and the continued recognition and validation of the approach we adopted in *Bridges* lead us to the conclusion that the court erred in concluding that in a proceeding for condemnation by way of a declaration of taking the court is empowered to require the condemnor to prove the necessity of a given taking.

Our declaration of taking statutes were patterned upon the language of 40 U.S.C. §

258a [9] which governs "quick take" eminent domain proceedings by the United States. Decisions interpreting this federal statute may consequently be considered persuasive for purposes of construing the analogous provisions of our own statutes.[10]

A review of such decision reveals that it has been consistently recognized that the effect of the language of § 258a is that once a declaration of taking is filed title to the property is transferred to the condemning authority subject only to the right of the property owner to challenge the validity of the taking as not being for an authorized public purpose or as having been made capriciously or in bad faith.[11] It has, for example, been held that absent bad faith, if the use is a public one the necessity of a given taking is not a question for judicial determination;[12] that once the

Sec. 09.55.300. *Powers of court.* (a) The court has power

(1) to regulate and determine the place and manner of making the connections and crossings or of enjoying the common uses mentioned in § 260(5) of this chapter

. . . .

(2) to limit the amount of property sought to be condemned if, in its opinion, the quantity sought to be condemned is not necessary.

. . . . .

8. AS 38.35.010 *et seq.* See, for example, the October 17, 1973, letter from Governor William A. Egan to Hon. Terry Miller, President of the Senate, which accompanied the bill which (as later modified and adopted) substantially amended the original Right-of-Way Leasing Act of 1972. With respect to the subject of condemnation, the Governor observed that

. . . a modified form of eminent domain has been restored so that construction of pipelines may proceed promptly.

House Journal and Senate Journal of Alaska, Special Session 1973, at 8.

9. There is, regrettably, a dearth of legislative history available concerning the adoption of our declaration of taking statutes. To the effect that they were originally taken almost word for word from 40 U.S.C. § 258a, however, see 1960 Op. Alaska Att'y Gen., No. 15.

10. *See Russian Orth. Greek Cath. Church of N. America v. Alaska State Housing Auth.,*

498 P.2d 737 (Alaska 1972), where this Court looked to decisions under the federal act for guidance in construing the effect of AS 09.55.420 to 09.55.440. *See also Alaska Transp. Comm'n v. Alaska Airlines, Inc.,* 431 P.2d 510, 512 (Alaska 1967).

11. *Wilson v. United States,* 350 F.2d 901, 906–07 (10th Cir. 1965) ; *United States v. Threlkeld,* 72 F.2d 464, 465 (10th Cir. 1934) ; *see Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954) ; *United States ex rel. T.V.A. v. Welch,* 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946) ; *United States v. Carmack,* 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209 (1946) ; *United States v. New York,* 160 F.2d 479 (2d Cir. 1947) ; *United States v. 1,278.83 Acres of Land,* 12 F.R.D. 320 (E.D.Va.1952). *See also* 6A J. Sackman, Nichols' The Law of Eminent Domain § 27.-26, at 27–80 (rev. 3d ed. 1974) where it is stated that

[s]ince the wisdom and expediency of a condemnation are not matters for judicial review, defenses relating to the necessity for acquisition of property, the necessity for resorting to eminent domain to acquire it, the extent or amount of property to be taken, the choice of the tract, the wisdom or feasibility of the project, the kind of property or the nature of the estate to be acquired, are not proper. (footnote omitted)

12. *Wilson v. United States,* 350 F.2d 901, 907 (10th Cir. 1965).

declaration of taking is filed and the estimated compensation is deposited, neither the condemnee nor the court has the power to question the condemnor's determination of the necessity of a particular taking;[13] and that as the judicial role in examining such condemnation proceedings does not extend to determining whether the land sought is actually necessary to the project, the court's review power is limited to those cases where there has been some clear abuse of administrative discretion—where the officials making the administrative decisions have acted in bad faith or so capriciously and arbitrarily that their action was without adequate determining principle or was unreasoned.[14]

Such an approach is in keeping with what would appear to be the general rule that the scope of review of any taking in eminent domain is extremely limited; that questions of necessity and expediency are largely beyond the reach of the court, which ought generally to limit its inquiry to the question of the existence of a proper public purpose and the absence of any abuse of the power of condemnation.[15] It is consequently recognized that it is no defense in a condemnation proceeding that some other location for the taking might reasonably have been selected or some other suitable property obtained.[16]

■ As against this proposition, however, Alaska is among the minority of jurisdictions which statutorily call for judicial inquiry into the question of necessity in eminent domain proceedings.[17] AS 09.-55.270, for example, specifically requires for a showing that the taking "is necessary to the use" before property can be taken. The resultant conflict between this provision and the concept of judicial review developed under the language of 40 U.S.C. § 258a—which may be presumed to have been intended to apply to our declaration of taking provisions[18]—seems clear. Recognizing our duty to construe statutes covering the same subject matter in pari materia,[19] and to adopt where possible a reasonable construction of each which realizes legislative intent and avoids conflict or inconsistency with the other,[20] we nev-

13. *United States v. Mischke*, 285 F.2d 628 (8th Cir. 1961); *United States v. 6.74 Acres of Land*, 148 F.2d 618 (5th Cir. 1945).

14. *United States v. Certain Land in Borough of Manhattan*, 233 F.Supp. 899 (S.D.N.Y.1964), *aff'd*, 336 F.2d 1021 (2 Cir.). *See also United States v. 80.5 Acres of Land*, 448 F.2d 980 (9th Cir. 1971); *United States v. 2,606.84 Acres of Land*, 432 F.2d 1286 (5th Cir. 1970), *cert. denied*, 402 U.S 916, 91 S.Ct. 1368, 28 L.Ed.2d 658, *reh. denied*, 403 U.S. 912, 91 S.Ct. 2203, 29 L.Ed.2d 690.

15. The overwhelming weight of authority makes clear beyond any possibility of doubt that the question of the necessity or expediency of a taking in eminent domain lies within the discretion of the legislature and is not a proper subject of judicial review. (footnote omitted)

1 J. Sackman, Nichols' The Law of Eminent Domain § 4.11, at 4–138 (rev. 3d ed. 1974).

16. 6A *id.* § 27.26, at 27–80.

17. *See* Ariz.Rev.Stat. § 12–1112 (1956); Smith-Hurd Ill.Ann.Stat. ch. 47, § 2.2(c) (1969); 7 Rev.Codes Mont.1947, § 93–9905 (1964).

We note that though we could find no explicit legislative recognition of this fact, the editors of our own Alaska Statutes 1962 have indicated in their annotations to AS 09.55.270 that this section was derived from an almost identical provision in the Montana Statutes. *See* 7 Rev.Codes Mont.1947, § 93–9905 (1964). This fact would appear to offer much in the way of explanation for the trial court's reliance upon Montana precedent when it concluded that "when the condemnor fails to consider the question of the least private injury between alternate routes, its action is arbitrary and amounts to an abuse of discretion." Citing Montana Power Co. v. Bokma, 153 Mont. 390, 457 P.2d 769, 775 (1969).

18. *Cf. Nicholson v. Sorensen*, 517 P.2d 766, 770 (Alaska 1973); *Gray v. State*, 463 P.2d 897, 902 (Alaska 1970). *See also* p. 10 & note 10 *supra*.

19. *See, e. g., Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974); *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296 (Alaska 1972); *United States v. Hardcastle*, 10 Alaska 254 (1942).

20. *Gordon v. Burgess Const. Co.*, 425 P.2d 602 (Alaska 1967).

ertheless find the concept of judicial review embodied in our general eminent domain statutes to be inconsistent with and inappropriate to proceedings under a declaration of taking.

The conclusion seems inescapable that there exists a clear functional distinction between proceedings in condemnation under a declaration of taking and those under a complaint seeking condemnation and an order for possession. Under the former title passes immediately upon filing and deposit—at which time, under AS 09.55.440, the property is deemed to be "condemned and taken for the use of the plaintiff." [21] Under the latter no such vesting occurs; title does not vest, nor does "condemnation" actually occur until the final award is determined and an order and judgment of condemnation is entered by the court.

As recognized in *Bridges,* as well as later cases,[22] the difference in the nature of these two proceedings is not merely procedural; the almost summary quality of the former bespeaks the grant of an additional substantive *power* of condemnation which considerably reduces the rights of the landowner to contest the taking.[23] Consequently, reading AS 09.55.420 to 09.-55.450 in this light, we are lead to the conclusion that the intent of these provisions was to bring, in summary fashion, statutory finality to the questions of title and right to possession even though litigation continues with respect to the ultimate amount of compensation to be paid. If such finality is to be given any meaningful effect, we conclude that such vesting must be subject only to the rather limited right of the owner to contest the validity of the taking as not being statutorily authorized or as having been capriciously or arbitrarily exercised.[24] To permit the owner to challenge the necessity of the particular taking without an initial showing on his part that it is the result of some clear abuse of discretion is to give the concept of a declaration of taking no more effect than that of a complaint in any condemnation proceeding; such an interpretation would render the language of AS 09.55.440 noted above essentially meaningless.

We would note at this juncture that although the enabling legislation under which petitioners are empowered to use a declaration of taking does not refer to or incorporate it—and we consequently do not find it wholly dispositive of the case at hand—AS 09.55.460(b) provides in part that

[t]he plaintiff may not be divested of a title acquired except where the court finds that the property was not taken for a public use.

We find that this express declaration of legislative intent as to the scope of judicial review in such proceedings lends considerable support for the conclusion we reach today.

Our decision that the question of necessity under a declaration of taking is not one for initial judicial consideration as in the case of other condemnation proceedings is also buttressed by several other factors. There is evidence, for example, that the legislature was at least well aware of the substantive differences in the two types of proceedings when it considered the use of eminent domain powers for pipeline right-of-way acquisition. Prior to the adoption of the present AS 38.35.130 an amendment was offered to the bill which would have authorized for pipeline purposes the exercise of eminent domain powers only under AS 09.55.240–09.55.410, the general eminent domain provisions.[25]

---

21. *See* note 3 *supra.*

22. *See City of Anchorage v. Lot 1 in Block 68 of Orig. Town.,* 409 P.2d 609 (Alaska 1966).

23. *See* p. 6–7 & note 5 *supra.*

24. *Cf.* 6A J. Sackman, Nichols' The Law of Eminent Domain § 27.25, at 27–61 to –62 (rev. 3d ed. 1974).

25. See the amendment offered by Senator Croft to the committee substitute for the original senate bill amending AS 38.35.130 which would have inserted after "condemn" the words "by eminent domain under AS 09.55.240–09.55.410." House Journal and Senate Journal of Alaska, Special Session

Such an approach was rejected, however, and the present version allowing the use of a declaration of taking was adopted instead.

It must next be recognized that the Montana case law upon which the trial court apparently founded at least part of its decision[26] arises from a statutory scheme which does *not* recognize at all the concept of a declaration of taking or any other such "quick take" proceeding.[27] Moreover, there is evidence that the courts of Montana have themselves not been entirely consistent on the subject of judicial review of administrative determinations of necessity. In *State Highway Commission v. Crossen-Nissen Co.*, 145 Mont. 251, 400 P.2d 283, 285 (1965), for example, it was held that although (in a normal eminent domain action) the plaintiff has the initial burden of making some sort of prima facie showing of necessity, it is

> incumbent upon the defendant to show fraud, abuse of discretion or arbitrary action in order to defeat the action of the [plaintiff].

The court went on to hold that

> even when necessity has been challenged on the ground of arbitrariness or excessiveness of the taking, there is left largely to the discretion of the condemnor the location, route, and area of the land to be taken. There rests upon the shoulders of one seeking to show that the taking has been excessive or arbitrary, a heavy burden of proof in the attempt to persuade the court to substitute its judgment for that of the condemnor. . . . "[Such] proof should be made clear and convincing; otherwise no location could ever be made."

Assuming arguendo that such an evidentiary rule is wholly appropriate for proceedings under the same general eminent domain provisions in this state (a question we need not reach in this case), we find it difficult to square this analysis of burdens of proof with the ruling upon which the trial court based its decision—that the condemnor is under a burden of demonstrating ab initio its consideration of alternative routes and of justifying the ultimate route selected. The mandate of a prima facie showing of "necessity," even in Montana, has been held to require only a showing that the particular property taken is "reasonably requisite and proper for the accomplishment of the purpose for which it is sought."[28] Notwithstanding the difficulty involved in reconciling these positions, or Montana case law, we are persuaded that no such burden of proof as was imposed by the trial court was ever intended to apply to proceedings under a declaration of taking in this state.

The final touchstone leading us to the conclusion that AS 09.55.420–09.55.450 were clearly intended to authorize a more summary and less judicially dependent exercise of the power of eminent domain is found in the original act under which the declaration of taking proceeding was authorized.

Sections 1 through 8 of chapter 90, SLA 1953, authorized the use of a declaration of taking as a special supplemental proceeding "to provide for obtaining possession of lands taken for public highway purposes by eminent domain." Prior to 1953 no such proceeding was recognized under Alaskan law. Although now no longer limited to public highway purposes, the state being authorized to use the proceeding for any

---

1973, at 99. Although this amendment passed the senate, the failure of both houses to concur on this as well as other amendments to the Right-of-Way Leasing Act resulted in a Free Conference Committee substitute which, as finally approved, provided the present version.

26. *See* discussion, note 17 *supra*.

27. *See* 7 Rev. Codes Mont.1947, §§ 93–9901 *et seq.* (1964).

28. *State Highway Comm'n v. Crossen-Nissen Co.*, 145 Mont. 251, 400 P.2d 283, 284 (1965); *accord, State Highway Comm'n v. Yost Farm Co.*, 142 Mont. 239, 384 P.2d 277, 279 (1963); *State ex rel. Livingston v. District Court*, 90 Mont. 191, 300 P. 916 (1931).

purpose for which the right of eminent domain may be exercised,[29] the original 1953 Act is otherwise in almost every respect identical to the present provisions. The 1953 Act, however, contained a severability clause which specifically provided in addition that

> [a]ll laws or portions of laws inconsistent with the policy and provisions of this Act are hereby repealed to the extent of such inconsistency in their application to the declaration of taking procedure authorized by this Act.[30]

This provision, though not incorporated in the original 1962 codification of the Alaska Code of Civil Procedure,[31] not only clearly reflects a legislative recognition of the substantive difference between the use of this special power and that of eminent domain in general, but it also evidences in its express repealer language an intent that the exercise of this power should not be restricted by limitations, otherwise applicable to eminent domain, which are inconsistent with the policies of immediate vestiture of title and the limited power of the court to divest such title once acquired (as is reflected in the present AS 09.55.460 noted *supra*). A judicial recognition of these policies appears at least by implication in our opinion in *Bridges.*

▮ After consideration of the foregoing, we are of the opinion that in proceedings in eminent domain by way of a declaration of taking under AS 09.55.420–09.55.450, the court is without authority, either by virtue of the express mandate of AS 09.55.460(b) or by implication from the legislative history and policy evidenced in AS 09.55.440, to review the question of the necessity of a particular taking absent a clear showing of fraud, bad faith, arbitrariness or an abuse of discretion in exercise of the power of condemnation by the condemning authority. Once an authorized public use for the taking is established by the condemnor, and statutory and procedural requirements are otherwise satisfied,[32] that the particular taking is reasonably requisite to the realization of that use shall be presumed. Notwithstanding such provisions as AS 09.55.270(2), judicial inquiry into such necessity or the condemnor's determinations with respect thereto is not appropriate unless and until the condemnee has presented clear and convincing evidence that the condemnor has acted in bad faith or so capriciously and arbitrarily as to indicate the absence of any reasonable determining principle.

▮ In this case it is clear that the use intended is public and statutorily authorized. Petitioners have, moreover, presented unrebutted evidence to the effect that the design and construction criteria for the pipeline are most feasibly satisfied by the route across the property of respondent. The fact that some other available routing might suffice or even be more desirable in some respects is not sufficient in this case to raise a proper defense to the declaration of taking. Consequently, it cannot be said that petitioner is under any duty to initially submit evidence that it has considered such alternate routing; nor can

---

29. We note that the historical development of these provisions reflects the adoption of increasingly less restrictive limitations on the use of this power. *See* § 1, ch. 90, SLA 1953 (use by the Territory for public highway purposes); § 1, ch. 138, SLA 1955 (use by the Territory "for any purpose for which the Territory is authorized the power of eminent domain"); §§ 1–5, ch. 146, SLA 1959 (extending the use of the declaration to the state, public utility and school districts); §§ 13.19–13.23, ch. 101, SLA 1962 (extending the power to first-class cities); § 2, ch. 122, SLA 1966 (adopting the language presently appearing in AS 09.55.420).

30. Section 7, ch. 90, SLA 1953.

31. Sections 13.19–13.23, ch. 101, SLA 1962.

32. It is clear, for example, that the failure of a declaration of taking to satisfy the specific requirements of AS 09.55.430 would constitute a proper defense to the condemnation. *See* note 3 *supra*. It is also manifest that a taking may properly be challenged on the ground that the condemnor's action is not in compliance with such specific restrictions on the exercise of the power as may appear in the commissioner's delegation of authority or the lease itself.

the failure to make such showing under the circumstances justify a finding of arbitrariness or an abuse of discretion. Only specific allegations of fraud, bad faith, or some gross abuse of discretion in locating the pipeline can raise issues sufficient to permit judicial review of the necessity of the taking.[33] No such allegations have been made herein. The determination of the location of the pipeline must therefore be left to the agency charged with carrying out its completion.[34]

The order of the superior court is vacated and the case is remanded for further proceedings in conformity with this opinion.

Vacated and remanded.

BOOCHEVER, J., not participating.

---

33. No challenge on constitutional grounds has been raised in this case and we do not reach such issue in this review.

34. *See Williams v. Transcontinental Gas Pipe Line Corp.*, 89 F.Supp. 485, 488–89 (W.D.S.C.1950).