22,757 SQ. FT., MORE OR LESS; 968 Sq. Ft., More or Less; Guy E. Kasnick; Lillian Boen Kasnick; and also all other Persons or Parties unknown Claiming a Right, Title, Estate, Lien, or Interest in the Complaint in this Action, Appellants,

v.

STATE of Alaska, Appellee.

No. S–3287.

Supreme Court of Alaska.

Aug. 3, 1990.

Rehearing Denied Sept. 11, 1990.

Lloyd I. Hoppner, Hoppner & Paskvan, P.C., Fairbanks, for appellants.

Linda L. Walton, E. John Athens, Asst. Attys. Gen., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The issue in this appeal is for what periods of time, if any, are Guy and Lillian Kasnick (the Kasnicks) entitled to interest on the value of the compensation they received when the state condemned their parking lot.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Kasnicks own the Sunset Inn in Fairbanks. On June 10, 1986 the state filed a complaint and "Declaration of Taking" to

condemn a portion of the parking lot surrounding the inn for a right-of-way, pursuant to the "quick take" provisions of AS 09.55.420–09.55.460. The necessity of the taking was contested by the Kasnicks.

The state moved for summary judgment as to the necessity of and authority for the taking, and immediate entry and possession of the parking lot, pursuant to AS 09.55.-450, despite the fact that the state had no immediate use for the lot.

On September 8, 1986 the state prevailed on its summary judgment motion. On the same day the trial court granted the state's AS 09.55.450 motion. The state was given *"immediate possession* of the property," pursuant to AS 09.55.450(a).[1] (Emphasis added).

On September 16 and 17 the Kasnicks' attorney, William R. Satterberg, and Linda Walton of the Attorney General's office reached an oral agreement concerning the issue of necessity. Satterberg memorialized the agreement in a letter to Walton dated the 17th. It is undisputed that the Kasnicks agreed not to seek appellate review of the necessity for the taking. It is also undisputed that as consideration for this forbearance, the Kasnicks would be permitted to use the condemned portion of the parking lot until the state's contractors actually began labor. The letter is silent as to the accrual of interest during this period.

According to Walton, she "did not even agree ... that the [Kasnicks] would be entitled to interest, despite continued occupancy." In fact, "[i]nterest did not occur to [her] one way or the other." However, Walton does not dispute that there was an agreement as to "continued occupancy" in exchange for the Kasnicks' forbearance of their right to seek appellate review.

Some construction on two subsections of the parking lot began in June 1987. Total exclusion of the Kasnicks and their customers from these two subsections did not occur until June 1988. The third subsection was not physically occupied by the state even by the date of trial. There is evidence, however, that the state's contractors carried on activities in the whole parking lot before then, including even portions not taken, occasionally using it as a staging area, a parking lot for their vehicles and a storage lot for their materials.

A jury returned a verdict of $599,369 representing just compensation for the taking. The trial court awarded interest on $371,369, the amount in excess of the state's deposit. *See State v. Alaska Continental Dev. Corp.*, 630 P.2d 977, 995 n. 31 (Alaska 1980). However, the court also ruled that interest should not begin before June 1, 1988.

The trial court found that "the agreement relied upon by [the Kasnicks] was silent with respect to [whether interest would accrue]." It then reasoned:

> [i]t is not logical to imply [from this silence] that the State gave up its statutory rights under AS 09.55.450 by the failure of the parties to discuss the term. Given that the Kasnicks remained in possession of [two subsections of the lot] at least until June 1, 1988, and still remain in substantial possession of [the third], it is up to the court to fix a reasonable rental.

The court then found that a "reasonable rental would at least equal the pre-judgment interest on the judgment to June 1, 1988," and offset the interest by that amount. The Kasnicks appeal.

## II. DISCUSSION

### A. THE SUPERIOR COURT ERRED BY DENYING THE KASNICKS PREJUDGMENT INTEREST.

 Questions as to when prejudgment interest begins to accrue are questions of law and subject to our independent judgment. *E.g., Land & Marine Rental Co. v. Rawls*, 686 P.2d 1187, 1191 (Alaska

---

**1.** The state seized immediate possession of the property despite Walton's later admission that the state had no immediate need for the property. *See* Alaska R.Civ.P. 11. This admission constitutes some evidence that appellate review might have been successful. *See ARCO Pipeline Co. v. 3.60 Acres, More or Less,* 539 P.2d 64, 72 (Alaska 1975) (showing of bad faith, abuse of discretion, or arbitrariness suffice to prevail on appeal).

1984). Our duty is to adopt the rule of law which is most persuasive in light of precedent, policy and reason. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

AS 09.55.440(a) provides that when a "quick take" is made "interest runs from the date title vests to the date of payment of the judgment." Because the state chose to proceed by the "quick take" procedure (declaration of taking and deposit), title vested in the state immediately upon the filing and deposit with the court. AS 09.-55.440; *ARCO*, 539 P.2d at 67. This occurred on June 10, 1986.

The order of the superior court of September 8, 1986, entered pursuant to AS 09.55.450, gave the state *"immediate possession* of the property." (Emphasis added). We have not previously considered the effect of an immediate seizure of possession by the state. The center of this controversy lies in the proper interpretation of AS 09.55.450. AS 09.55.450(a) provides in full:

> Upon the filing of the declaration of taking and the deposit of the estimated compensation, the court may, upon motion, fix the time during which and the terms upon which the parties in possession are required to surrender possession to the petitioner. However, the right of entry shall not be granted the plaintiff until after the running of the time for the defendant to file an objection to the declaration of taking or until after the hearing on any objection to the declaration of taking if the objection is made in the time allowed by law. Where the party in possession withdraws any part of the award and remains in possession, the court may fix a reasonable rental for the premises to be paid by that party to the plaintiff during such possession.

■ Implicit, therefore, in the trial court's allowance of a rental offset is a finding that the Kasnicks never surrendered legal possession of the lot to the state. Were this true, it would mean that a condemnor could both judicially seize immediate "possession" under this statute and yet maintain that the prior owner retained "possession" for purposes of the same statutory subsection. This is an untenable construction. It is a basic rule of statutory construction that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." *E.g.*, 2A C. Sands, Sutherland Statutory Construction § 46.06, at 104 (4th ed. 1984); *see also Alascom, Inc. v. North Slope Borough, Bd. of Equalization*, 659 P.2d 1175, 1178 & n. 5 (Alaska 1983); *King v. Alaska State Housing Authority*, 633 P.2d 256, 264 (Alaska 1981); *Libby v. City of Dillingham*, 612 P.2d 33, 43 (Alaska 1980) (Rabinowitz, J., concurring); *Isakson v. Rickey*, 550 P.2d 359, 364 (Alaska 1976).

■ Despite the state's seizure of immediate possession pursuant to AS 09.55.-450(a), if the Kasnicks retained possession within the meaning of the same statute, the court's possession order, and the statute itself which authorized it, become meaningless. *Cf. Brown v. United States*, 263 U.S. 78, 84–86, 44 S.Ct. 92, 94–95, 68 L.Ed. 171 (1923) (interpreting effect of immediate seizure of possession under analogous Federal and Idaho statutes as stripping prior owner of all right, title and interest in both land and subsequent rents and profits and vesting it in the taker).[2]

At the time of the Satterberg/Walton agreement, the state had both title and possession, entitling it to chain off the parking lot and let it sit, or immediately begin work.[3] The Kasnicks had the right to seek appellate review. All the Satterberg/Walton agreement says, both sides admit, is that the forbearance of each was the *quid pro quo* for the other. It says

---

**2.** We also note the state's concession in its brief that it had legal possession throughout. This concession is consistent with its sporadic use of the lot before work began on it, apparently in conjunction with other projects in the area.

**3.** The state's unsupported allegation that it "had no practical means of preventing the Kasnicks from continuing to use the property" is irrelevant. It had the legal right to do so.

nothing about interest. Indeed, interest was not contemplated by the state. The state had possession, the Kasnicks did not, and the agreement did not affect interest. It did not stop running.

Use was *admittedly* given for bargained-for consideration, and the state presents no persuasive reason to disregard the agreement.

The state argues that had the issue of offsetting interest by rental been discussed explicitly, "it is unlikely that the state would have agreed to give up its rights to avoid the payment of interest." This argument apparently is what persuaded the trial court to allow a rental offset.

However, as discussed *supra*, it was the state's judicial seizure of *possession* which cost it a rental offset; the agreement merely did nothing to resurrect it. The state's argument, reduced to its core, is that it subjectively did not intend to forego rent, and did not think about what effect its previous seizure of immediate possession might have on any rental entitlement.

An interpretation of AS 09.55.450(a) which equates use pursuant to a contract supported by bargained-for consideration with "possession," thereby giving the condemnor *additional* compensation for the continued use, is not only an unreasonable construction of the statute, but one which is inequitable.[4]

Consider the posture of these parties at the time the state obtained immediate possession. An issue involved in valuing the condemned tract was the availability of substitute parking. The state's appraiser suggested that were the Kasnicks to use an adjacent parcel (the back lots) for parking, the "cost of cure" would be not more than $22,000. The Kasnicks, on the other hand, had cost of cure estimates anywhere from $200,000 to $299,000, in rough figures. It was their view that the back lots could not be considered usable for curative purposes, since the back lots had been conveyed to a corporation owned by the Kas-

nicks, who claimed that they intended to build a motel on them. The state claimed that the conveyance to the corporation was a sham, and in any event since the corporation was controlled by the Kasnicks, they could use the back lots for curative purposes. Whether the back lots were part of the "larger parcel" was determined to be a jury question in a memorandum decision and order. Assuming the back lots were part of the larger parcel, the state argued that the Kasnicks had a duty to mitigate their damages by making an immediate cure, thereby substantially reducing any claim for business loss resulting from the condemnation. Thus, when the state took possession of the parking lot, its value (which in part depended on the cost of a replacement lot) was left up in the air. If the Kasnicks' back lot was not eventually held to be part of the parcel, the cost of a replacement, and hence the value of the land taken, and hence its fair rental value, would be higher.

Allowing a rental offset for continued use pursuant to an agreement supported by consideration would require significant guesswork on the part of the condemnee, who is required to be treated with the utmost fairness in condemnation proceedings. *Cf. Bridges v. Alaska Housing Authority*, 349 P.2d 149, 153 (Alaska 1960). The condemnee should not have to second-guess how a court, or jury, will rule on the question of parceling. Whether a "windfall" might occur is an uncertain question. Furthermore, evidence with respect to damages dependent upon parceling may not even be available when the condemnee must make a decision, i.e., within ten days after the court awards immediate possession to the state. Here the court looked at all the evidence in the record *following trial* on the issue of damages to determine the propriety of an offset. That was not available to the parties at the time of their agreement; it could not be determined whether a "windfall" would result. We

---

4. This is where we differ with our dissenting colleagues. The dissent correctly notes that AS 09.55.450(a) is designed to prevent a condemnee from receiving both the value of the interest on the condemnation award and the value of continued use. Here, because *consideration* was given for continued use, the condemnee is not getting both; continued use was paid for.

conclude it would be grossly unfair to place the condemnee in that position.

If the state believed that it might stand to lose by allowing the condemnee to use the property on certain terms and conditions, it did not have to do so. It had taken title and immediate possession. The condemnee can be held in contempt for not giving up immediate possession if the condemnee uses or leaves personal property on the condemned property, and the state can let the chips fall where they may with respect to parceling, loss of business damages and the like. The state can also negotiate for an abatement, proportionate reduction or some other treatment of interest. In this case, having made an agreement which it admits it benefited from, and admits that the Kasnicks gave up something to obtain, the state seeks the further benefit of a hindsight look at the evidence.

## B. THE TRIAL COURT DID NOT ERR BY CONSIDERING THE SATTERBERG/WALTON AGREEMENT.

■ The state also seeks to defend its rental offset by arguing that the Satterberg/Walton agreement ought not to have been examined at all by the trial court, relying on *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104 (Alaska 1977) (hereinafter *ICB*). In *ICB*, we held that oral settlements of cases fell within Civil Rule 81(e). *Id.* at 106. *ICB* also held that where an oral settlement had been reached, Rule 81(e) is met only if both parties admit either in writings filed with the clerk or in open court that a settlement has been reached. *Id.* at 106–07. Separate affidavits filed with the clerk, acknowledging that a settlement has been reached and agreeing on its terms, suffice. *Id.* at 106.

Because the Kasnicks agreed to forego their right to seek appellate review, this is a settlement of litigation. Nonetheless, the *ICB* requirements have been met. Both sides filed sworn documents regarding the agreement and both attached the letter memorializing it as an exhibit. It is not the terms of the agreement that are in dispute, but rather its effect upon collateral rights. The state's argument is without merit.

## III. CONCLUSION

The state is entitled on remand to an offset for the period between the filing of its complaint and the successful seizure of possession (6/10/86–9/8/86), as the Kasnicks did have possession for this period and gave no consideration for it. Between September 8, 1986, when the state seized possession, and September 16, 1986, the date of the Satterberg/Walton agreement, the Kasnicks were using the lot, apparently without state consent. The state has a claim for these eight days as well. The judgment of the superior court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, Justice, with whom MATTHEWS, Chief Justice, joins dissenting.

I dissent from the court's holding that the superior court erred in denying the Kasnicks prejudgment interest by virtue of its imposition of a rental offset. Given the authorization found in AS 09.55.450(a) and the factual context of this record, I cannot agree that the superior court abused its discretion in fixing a reasonable rental for the Kasnicks' continued beneficial use of parcels 56 and 57.

Alaska Statute 09.55.450(a) provides, in relevant part:

> Where the party in possession withdraws any part of the award and remains in possession, the court may fix a reasonable rental for the premises to be paid by that party to the plaintiff during such possession.

Nothing in the Satterberg–Walton agreement, memorialized in Satterberg's letter of September 17, 1986, undermined the superior court's authority to fix a reasonable rental for the Kasnicks' continued possession and beneficial use of parcels 56 and 57 pursuant to the statute. The Satterberg–Walton agreement does not address the question of accrual of interest for the period during which the Kasnicks were to have

the beneficial use of the parcels in question. On the other hand, the agreement explicitly gave the Kasnicks the beneficial use of parcels 56 and 57 until construction by the state actually commenced on the road project, for the purpose of making parking available to their patrons. In exchange for this use, the Kasnicks agreed not to appeal or otherwise seek review of the superior court's order holding that the state had established both its authority to take the Kasnicks' property, and the need to do so. The Satterberg–Walton agreement further indicates that a stipulation was to be prepared providing for the disbursal to the Kasnicks of at least $200,-000.00 from the funds which the state had deposited as its estimate of just compensation.

Alaska Statute 09.55.450(a) is designed to prevent a condemnee from receiving both interest on the money equivalent of the property taken and the continued use of the property by the condemnee. The superior court's disallowance of interest effectuated this purpose. As noted, the Satterberg–Walton agreement fails to address either the subject of interest or the implications of AS 09.55.450(a). Nonetheless, applicable laws which are in existence at the time of the formation of a contract and which the parties are presumed to know are incorporated into the contract as a matter of law.[1] Thus, I agree with the superior court's conclusion that it is illogical to assume that by virtue of the Satterberg–Walton agreement the state waived its right to invoke the court's discretion to fix a reasonable rental for the Kasnicks' continued beneficial use of parcels 56 and 57.

1. *See Skagway City School Board v. Davis*, 543 P.2d 218, 222 (Alaska 1975).