**Michael A. CARPENTINO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7659.**

Court of Appeals of Alaska.

Jan. 4, 2002.

Michael D. Dieni, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Ben M. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Michael A. Carpentino was indicted on several counts of sexually abusing an eight-year-old girl. At Carpentino's trial, the superior court allowed the State to introduce evidence that Carpentino had once gotten into bed with the girl's older brother and had sexually abused him. The superior court also allowed the State to introduce evidence that on another occasion Carpentino brought another sibling, a three-year-old girl, into his bed. (The State did not assert that Carpentino had abused the three-year-old.)

The superior court ruled that this evidence was admissible under Alaska Evidence Rule 404(b)(1) to show Carpentino's "scheme" or "plan" to get into bed with young children. We conclude that this evidence should have been excluded because its only real relevance was to show (or suggest) that Carpentino had twice sexually abused other victims, and that he was therefore the type of person who was more likely to have committed the acts of sexual abuse charged in the indictment. Rule 404(b)(1) prohibits the introduction of evidence of a person's other crimes for this purpose. Because we believe that the jury's verdict was likely influenced by this evidence, we reverse Carpentino's convictions.

*Factual background of this case, and description of the challenged evidence*

In 1998, eighteen-year-old Michael A. Carpentino lived with a family in North Pole. He was treated like a member of the family: he had his own room, he shared in the household chores, and he helped care for the family's children. In 1999, Carpentino was accused of sexually abusing V., the eight-year-old daughter in this family.[1] The Fairbanks grand jury returned a seven-count indictment charging Carpentino with various acts of sexual penetration and sexual contact with V..

At trial, the State asked Superior Court Judge Ralph Beistline for permission to introduce evidence that Carpentino had once sexually abused V.'s brother, eleven-year-old B.. In *voir dire* examination, B. testified that Carpentino climbed into bed with him one night after explaining that he had no blankets for his own bed. B. fell asleep beside Carpentino, only to awake later and find that Carpentino was fondling his genitals. B. ordered Carpentino to get out of his room. Carpentino left; but before he did, he told B. that if B. revealed what had happened, he would kill B. and his family.

The State suggested that B.'s testimony was admissible under two rationales. First, the State argued that B.'s testimony was admissible under Evidence Rule 404(b)(1) because it tended to prove that Carpentino had a plan or scheme to get into bed with young children—thus purportedly corroborating V.'s account of how Carpentino enticed her into his bed. Second, the State argued that B.'s testimony was admissible under Evidence Rule 404(b)(2) because it tended to prove that Carpentino had committed a similar type of sexual abuse on another child victim who was similar to V..[2]

Judge Beistline ruled that B.'s testimony was not admissible under Rule 404(b)(2), apparently because he was not convinced that B., an eleven-year-old boy, was a victim "similar" to V. (an eight-year-old girl). (Similarity of the victims is required by Rule 404(b)(2)(iii).) Nevertheless, Judge Beistline ruled that B.'s testimony was admissible under Rule 404(b)(1) because it tended to prove that Carpentino had a plan or scheme to get into bed with the children. The judge therefore allowed B. to repeat his testimony in front of the jury.

Later in Carpentino's trial, the State called the children's mother, M.. Over defense objection, the State asked Judge Beistline for permission to have M. testify that her three-

1. The initials used in this opinion are arbitrary; they are not abbreviations of people's names.

2. Alaska Evidence Rule 404(b)(2) states that in prosecutions for sexual abuse of a minor, "evidence of [a defendant's] other acts ... toward ... another child is admissible if ... the [defen-

dant's other] offenses (i) occurred within the 10 years preceding the date of the offense charged; (ii) are similar to the offense charged; and (iii) were committed upon persons similar to the prosecuting witness."

year-old daughter, S., announced one day that she had been allowed to sleep in Carpentino's bed.

The prosecutor did not suggest that Carpentino had sexually abused S. in any way. Instead, the prosecutor argued that evidence of this incident was likewise admissible under Evidence Rule 404(b)(1) because it tended to prove Carpentino's scheme or plan for gaining access to the children in bed. Judge Beistline agreed with this analysis, and he therefore allowed the jury to hear M.'s testimony on this subject—"not to prove that [Carpentino] did anything to any other child", but "to show [his] plan and scheme of access to [the] children's bed[s], [thus] corroborat[ing][V.]".

*Why we conclude that the challenged evidence should not have been admitted under Evidence Rule 404(b)(1)*

Evidence Rule 404(b)(1) bars the admission of evidence of a defendant's other crimes if that evidence is introduced for the sole purpose of proving that the defendant is a person who, by nature, engages in such wrongful acts and who consequently could be expected to behave the same way during the occasion being litigated.[3] In Carpentino's case, Rule 404(b)(1) would prohibit the State from introducing evidence that Carpentino had sexually abused children other than V. if this evidence was solely relevant to showing Carpentino's propensity to sexually abuse children.

At trial, the State argued that B.'s testimony and M.'s testimony was not excluded by Rule 404(b)(1) because this testimony was not being offered to prove Carpentino's desire to sexually abuse other children in the family. Rather, the State contended, this testimony was relevant to establish Carpentino's "scheme" or "plan" to get into bed with the children, thus corroborating V.'s testimony that Carpentino sexually abused her while they were in bed together. According to the State's theory, it did not matter what Carpentino intended to do once he got into bed

with the children; his act of getting into bed with them was the important thing.

But this explanation strains credulity. If Carpentino's motive for getting into bed with B. and with S. was truly irrelevant, then Carpentino's act of once sharing a bed with young children under his care would seem to be irrelevant too. If Carpentino spent one night in the same bed as B. because he was cold or, indeed, for any other reason unrelated to sexual activity, this would be irrelevant to the charge that Carpentino sexually abused V..

An analogous situation would be presented if a defendant was charged with bringing a woman home from a date and then raping her. Evidence that the defendant had brought other women home from dates would be irrelevant unless there was reason to conclude that the defendant's conduct on these other occasions was preparatory to other acts of rape.

Likewise, the mere fact that Carpentino spent one night in bed with three-year-old S. adds nothing to the State's case if Carpentino's conduct was not related to sexual activity. Carpentino's conduct becomes relevant only if it is seen as a prelude to sexual abuse. And because the State's evidence pertaining to B. and S. was relevant only if it was viewed as prelude to sexual abuse, that evidence should have been excluded under Rule 404(b)(1).

This court addressed a similar Rule 404(b) problem in *Velez v. State*, 762 P.2d 1297 (Alaska App.1988). The defendant in *Velez* was accused of "date rape"—of inviting a woman out, then using threatening words and/or behavior to coerce her into having sex with him. At trial, the State offered testimony from two other women that Velez had engaged in similarly coercive behavior when they dated him.

The State's argument for admission of this evidence paralleled the argument that the prosecutor employed in Carpentino's case: that is, the State contended that evidence of Velez's conduct toward the other women was

---

**3.** *See Smithart v. State*, 946 P.2d 1264, 1270–71 (Alaska App.1997), *reversed on other grounds*, 988 P.2d 583 (Alaska 1999).

admissible under Evidence Rule 404(b)(1) because it tended to show Velez's pattern of behavior, thus corroborating the account of the victim named in the indictment.

This court rejected the State's argument because the purported corroborative value of the testimony implicitly rested on the inference that Velez had a propensity to sexually assault his dating partners:

> [This] issue turns on whether, and to what extent, Velez engaged in coercive behavior or engaged in conduct likely to induce fear in his victim if she denied his request for sexual intercourse. Velez's activities with other women were marginally relevant to show how he conducted himself with each of his victims, and to that extent corroborated their testimony about his conduct with them, but this is pure propensity evidence, absolutely forbidden by Evidence Rule 404(b). Thus, the state cannot offer evidence that Velez coerced [other women] to support an inference that he had a disposition to force his affections on unwilling women, and then [ask the jury to] infer from that disposition that he forced his affections on G.J. [the victim named in the indictment]. Despite its relevance, this evidence is absolutely precluded [by Evidence Rule 404(b) ].

*Id.* at 1303–1304 (citations omitted).

In response to *Velez* and similar decisions construing Evidence Rule 404(b), the legislature amended the rule. The legislature placed the original text of Rule 404(b) into a new subsection (1), and it expanded the rule by adding two new subsections, 404(b)(2) and (b)(3). Subsections (b)(2) and (b)(3) "authorize the introduction of evidence concerning the defendant's other [acts of sexual assault or abuse] even though that evidence would otherwise be barred by Rule 404(b)(1)." [4] But *Velez* continues to govern the admissibility of this evidence if is offered under Rule 404(b)(1).

In Carpentino's case, the challenged evidence was offered under Rule 404(b)(1), and the State's theory of admissibility rested on an implicit assertion concerning Carpentino's sexual propensities. The fact that Carpentino spent one night in the same bed with B., or that he spent one night in the same bed with S., would corroborate V.'s account of the sexual abuse only if the jurors inferred that Carpentino was planning to sexually abuse V.'s two siblings.

And, in fact, the State's appellate attorney appears to have recognized this problem— because, on appeal, the State adopts a different approach to this evidence. Instead of arguing that Carpentino's motive for spending a night in bed with the children was irrelevant, the State now explicitly argues that Carpentino's conduct should be "seen as [two] individual examples or manifestations of a general design or plan devised by Carpentino ... [to use] his position as live-in babysitter to create situations in which he was in bed with the children [under his care]."

■ Relying on *Soper v. State,* 731 P.2d 587 (Alaska App.1987), the State argues that its evidence was admissible under Rule 404(b)(1) to prove Carpentino's "lewd disposition" to sexually abuse V. and her two siblings. But *Soper* does not support the State's argument. In fact, *Soper* rejects the State's interpretation of the "lewd disposition" exception to Rule 404(b)(1).

In *Burke v. State*[5], the Alaska Supreme Court recognized a limited "lewd disposition" exception to Rule 404(b)(1)'s general ban on proving character through evidence of other wrongful acts. Under this exception, which applies in prosecutions for sexual assault or sexual abuse of a minor, the State is allowed to offer evidence that the defendant engaged in other sexual assaults on, or sexual abuse of, the same victim.[6] The issue in *Soper* was whether this "lewd disposition" exception also allows the State to introduce evidence that the defendant sexually assaulted or abused the victim's siblings.

The defendant in *Soper* was charged with sexually abusing one of his daughters. The

---

4. *Wardlow v. State,* 2 P.3d 1238, 1246 (Alaska App.2000) (quoting *Clark v. State,* 953 P.2d 159, 163 (Alaska App.1998)).

5. 624 P.2d 1240 (Alaska 1980).

6. *See id.* at 1248–1250.

State presented testimony from the victim's two older sisters that Soper had sexually abused both of them until they finally ran away from home.[7] This court ultimately concluded that this evidence was admissible, but not because the *Burke* "lewd disposition" exception always encompasses a defendant's sexual misconduct with the victim's siblings. Rather, this court held that the testimony was admissible because the evidence tended to prove that Soper engaged in a distinctive and repeated pattern of abusive behavior with each of his daughters:

> [W]e are satisfied that the limited exception for lewd disposition recognized in *Burke* should be extended to cover the testimony of the complaining witness' sisters who were allegedly seduced under substantially similar circumstances at roughly the same age as the complaining witness. We stress that it is membership in a limited class of individuals having highly relevant common characteristics that serve[s] to differentiate the testimony in this case from that offered in *Bolden, Pletnikoff,* and *Moor* [cases where this court held that evidence of other sexual offenses should not have been admitted]. As the state points out, the prosecution's witnesses did not accuse Soper of isolated incidents of sexual abuse. Each testified to a continued pattern of ˙sexual abuse taking place over a substantial period of time. Each was seduced at approximately the same age, under virtually identical circumstances. While some of the incidents appear remote when viewed in isolation, the common experiences of each of these young women establishes a striking pattern of behavior that seems to occupy the middle ground between evidence of character … and habit[.]

*Id.* at 590.

The evidence in Carpentino's case does not meet this standard. Instead of a "continued pattern of sexual abuse taking place over a substantial period of time", the State offered evidence of one or two "isolated [instances] of sexual abuse". Instead of detailed, inter-corroborating descriptions of how and where the abuse was initiated and accomplished, the

State's evidence in Carpentino's case was pertinent to V.'s allegations only in that the alleged sexual abuse took place in a bed and involved one of V.'s siblings.

In short, *Soper* does not support the State's argument that its evidence was admissible under the "lewd disposition" exception to Evidence Rule 404(b)(1). To the contrary, the evidence presented in Carpentino's case fails to meet the criteria for the limited expansion of the "lewd disposition" exception recognized in *Soper.*

Moreover, even if it might be argued that the evidence concerning V.'s brother and sister had some slight relevance outside the propensity ban of Rule 404(b)(1), that small probative value was greatly outweighed by the evidence's potential for unfair prejudice. Even though B.'s testimony was ostensibly admitted for the sole purpose of showing that Carpentino got into bed with another child, B. expressly testified that Carpentino had sexually abused him. Moreover, in addition to describing the act of sexual abuse, B. testified that Carpentino threatened to kill him if he revealed what had happened. These aspects of B.'s testimony went far beyond the superior court's rationale for admitting the testimony. Once the jurors heard B.'s accusations of sexual abuse and death threats, we do not believe that the jurors could disregard these accusations and focus ˙ solely on the limited assertion that Carpentino once got into bed with B..

We therefore conclude that Judge Beistline abused his discretion when he admitted the State's evidence under Evidence Rule 404(b)(1).

*Why we conclude that the challenged evidence should not have been admitted under Evidence Rule 404(b)(2)*

As an alternative rationale for admitting the evidence, the State renews its contention that the evidence was admissible under Evidence Rule 404(b)(2). Rule 404(b)(2) declares that, in prosecutions for sexual abuse of a minor, the State is authorized to present evidence that the defendant has sexually assaulted or abused other minors if (i) the

---

7. *Soper,* 731 P.2d at 589.

other acts occurred within the 10 years preceding the charged act, (ii) the other acts are similar to the charged act, and (iii) the other victims are similar to the current victim.

■ As explained above, Judge Beistline rejected the State's contention that its evidence was admissible under Rule 404(b)(2). However, an appellate court can uphold a trial court's ruling on any basis revealed by the record, even when the trial court expressly rejected the legal reasoning that the appellate court ultimately finds persuasive.[8] Thus, the State is free to argue that Judge Beistline should have admitted the disputed evidence under Rule 404(b)(2).

But the admissibility of the State's evidence under Rule 404(b)(2) involves questions of fact. To establish that the evidence was admissible under Rule 404(b)(2), the State was obliged to show that Carpentino's conduct toward V.'s siblings was (or could reasonably be interpreted to be) sexual abuse, that this abuse was similar to the abuse inflicted on V., and that V.'s siblings were "similar" victims to V. herself.

■ With regard to the evidence involving V.'s little sister S., the prosecutor expressly disavowed any intention of suggesting that Carpentino had sexually abused the three-year-old. The prosecutor told Judge Beistline that the evidence pertaining to S. was being offered solely to show that Carpentino had induced the child to get into bed with him (for reasons that were either unknown or irrelevant). This being so, the State failed to present a prima facie case for one of the primary foundational facts required by Rule 404(b)(2)—that Carpentino's conduct with S. was "similar to the offense charged".

■ The problem is different with respect to the evidence involving V.'s brother B.. In his testimony, B. stated that Carpentino fondled his genitals—an act that clearly qualifies as sexual abuse of a minor. But here, the State's problem was to prove that eleven-year-old B. (a boy) was a victim who should be deemed "similar" to eight-year-old V. (a girl).

The State argues that B. was similar to V. because both children "were pre-pubescent siblings … living together in the same household unit" and because "Carpentino, as the live-in babysitter, had [both children] in his charge." The State concedes that there were some "obvious dissimilarities" between the children, but the State points out that Rule 404(b)(2) calls for similarity, not "absolute unity of identity".

■ It is true that Rule 404(b)(2) requires only that the acts of abuse and the victims be "similar". But a trial judge's decision as to whether this required similarity is present will obviously turn on the specific facts of the case. In *Bohanan v. State*[9], we discussed the related issue of whether a defendant's prior crime was too "remote" to be admissible. We concluded that

> the "remoteness" of a prior crime does not hinge simply on a chronological calculation. A trial judge's determination of "remoteness" also involves a weighing of the circumstances surrounding the two incidents (the prior one and the charged one), an identification of the factors common to the two incidents, and an assessment of whether the probative value of these connecting factors is likely to appreciably diminish with the elapsed time.

*Id.* at 602.

■ Likewise, a trial judge's determination of "similarity" under Evidence Rule 404(b)(2) will rest on the judge's appraisal of the particular circumstances surrounding the two incidents, the judge's identification of the factors that the two incidents have in common and the factors that distinguish the two incidents, and (finally) an assessment of the relative importance of these common and distinguishing factors. An appellate court should disturb the trial judge's assessment only if it constitutes an abuse of discretion.

In Carpentino's case, Judge Beistline ultimately ruled that the evidence of Carpentino's assault on B. did not qualify for admission under Evidence Rule 404(b)(2) because

---

**8.** *See Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961); *Millman v. State,* 841 P.2d 190, 195 (Alaska App.1992).

**9.** 992 P.2d 596 (Alaska App.1999).

B. was not a sufficiently similar victim to his sister V. This, however, was not Judge Beistline's original ruling.

When this issue first arose, the prosecutor declared that the State was ready to present an expert witness who would testify that sex offenders often target all the children in a family, regardless of sex or age—thus suggesting that there was good reason to view B. and V. as "similar" victims. Based on this offer of proof, Judge Beistline initially ruled that the State's evidence pertaining to B. *was* admissible under Rule 404(b)(2).

But when the State failed to produce this expert witness at trial, Judge Beistline reversed himself and ruled that the evidence was not admissible under Rule 404(b)(2). Although Judge Beistline did not offer a detailed explanation of his action, the obvious inference is that the judge had doubts as to whether an eleven-year-old boy was a sufficiently similar victim to an eight-year-old girl. Without the State's promised expert testimony, the judge resolved these doubts in favor of Carpentino.

In the State's brief to this court, the State offers some colorable reasons why Judge Beistline should have viewed B. as "similar" to his sister V.. But we can not say that the judge abused his discretion when he concluded that the dissimilarities between these two children outweighed the similarities. We therefore reject the State's contention that the testimony pertaining to B. was admissible under Rule 404(b)(2). As an appellate court, we can only adopt an alternative rationale for admitting this evidence if the rationale is obvious from the record. Here, it is not.

*Why the improper admission of this evidence requires reversal of Carpentino's convictions*

█ When evidence is improperly admitted at a criminal trial, we must decide whether that evidence "appreciably affected" the jury's verdict. If so, the verdict must be reversed.[10]

█ Here, the jury improperly heard evidence that Carpentino had sexually abused V.'s brother and that Carpentino had threatened the boy with death if he revealed the abuse. The jury also heard evidence strongly suggesting that Carpentino either had sexually abused V.'s three-year-old sister or was preparing to.

The State's case was not overwhelming; the jury acquitted Carpentino of three charges out of seven. This split decision suggests that the jurors believed the case was close. Their decision to convict Carpentino of four of the charges might well have rested heavily on the evidence that Carpentino had abused two other members of the same family. Under these circumstances, we must reverse Carpentino's convictions.

The judgement of the superior court is REVERSED. Carpentino is entitled to a new trial.

---

**10.** *Love v. State,* 457 P.2d 622, 629–632 (Alaska 1969).