Michael A. **CARPENTINO**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–7659.

Court of Appeals of Alaska.

March 1, 2002.

C.'s therefore has been consistent ever since it contemplated placing J.M.H. with the C.'s.

Michael D. Dieni, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Ben M. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In *Carpentino v. State,* 38 P.3d 547 (Alaska App.2002), we reversed Carpentino's convictions for sexual abuse of a minor. We reached this decision because we concluded that the trial judge mistakenly allowed the State to introduce evidence that Carpentino had gotten into bed with two other children in the same family (siblings of the victim named in the indictment).

The State now seeks rehearing. The State's argument can be summed up in one sentence: the State asserts that we committed plain error when we failed to perceive that the disputed evidence was admissible under Alaska Evidence Rule 404(b)(4).

The State has never before argued that the disputed evidence was admissible under Evidence Rule 404(b)(4). The normal rule is that a party may not raise a new argument in a petition for rehearing. Thus, it appears that the State is procedurally estopped from pursuing its claim. But in any event, as we explain below, the State has failed to show that the challenged evidence was obviously and incontrovertibly admissible under Evidence Rule 404(b)(4). We therefore deny the State's petition for rehearing.

*Summary of our earlier decision*

Carpentino was indicted on seven counts of sexual abuse of a minor for engaging in various acts of sexual penetration and sexual contact with an eight-year-old girl. At Carpentino's trial, the State was allowed to introduce evidence that Carpentino had once climbed into bed with the victim's older brother; the boy testified that Carpentino sexually abused him and then threatened to kill him if he revealed the abuse. The State was also allowed to introduce evidence that Carpentino had once spent the night in the same bed with the victim's three-year-old sister. The State did not allege that Carpentino did this with a sexual motive; rather, the State argued that Carpentino's action merely demonstrated his "plan" or "scheme" to get into bed with young children.

The trial judge agreed with the State that all of this evidence was admissible under Evidence Rule 404(b)(1) to prove Carpentino's "scheme" or "plan". But on appeal, we concluded that the challenged evidence was relevant only to prove Carpentino's propensity to commit sexual abuse and that the evidence was therefore barred by Evidence Rule 404(b)(1).[1]

On appeal, the State argued that Evidence Rule 404(b)(2) provided an alternative rationale for admitting this evidence. Rule 404(b)(2) applies to prosecutions for sexual abuse of a minor; it authorizes the admission

---

1. *See Carpentino,* 38 P.3d at 550–52.

of evidence "of other acts by the defendant toward the same or another child ... if the prior offenses (i) occurred within the 10 years preceding the date of the offense charged[,] (ii) are similar to the offense charged[,] and (iii) were committed upon persons similar to the [victim]."

However, as we pointed out in our opinion, there were two problems with the State's theory. First, although the State alleged that Carpentino had once shared a bed with the younger of the two siblings, the State never alleged that Carpentino sexually abused or intended to sexually abuse this younger child. Without an allegation of sexual misconduct, Carpentino's alleged act of getting into bed with the younger child did not qualify for admission under Evidence Rule 404(b)(2).[2] Second, even though the State did allege that Carpentino had sexually abused the older sibling, the trial judge found that the older sibling was not "similar" to the victim—a foundational requirement for admission under Rule 404(b)(2)(iii). We held that the trial judge did not abuse his discretion when he reached this conclusion.[3]

### The State's petition for rehearing

The State has now filed a petition for rehearing in which the State advances a new rationale for admitting the challenged evidence. The State argues that its evidence was admissible under Evidence Rule 404(b)(4), which states that "[i]n a prosecution for a crime involving domestic violence", the trial judge is authorized to admit "evidence of other crimes involving domestic violence [perpetrated] by the defendant against the same or another person".

▮ The State has never before advanced this rationale for admitting the challenged evidence. This, in itself, is seemingly fatal to the State's claim, for a party can not present new arguments in a petition for rehearing:

> It is elementary law that parties can not require this court to address claims or arguments that were not briefed. A party's failure to brief an issue constitutes an abandonment of that issue. Appellate

Rule 506(a) allows a party to seek rehearing when this court "has overlooked ... or failed to consider a principle directly controlling" the decision on appeal, or when this court "has overlooked ... [a] material ... proposition of law". However, Rule 506(a) was not intended to allow parties to raise new arguments after they have had a chance to analyze an appellate court's decision. Rule 506(a) implicitly limits rehearing to legal principles or propositions that were raised by the parties in the normal course of the appeal.

*Booth v. State*, 903 P.2d 1079, 1090 (Alaska App.1995) (citation omitted).

The State recognizes this procedural problem and attempts to circumvent it in two ways.

First, the State asserts that its argument based on Evidence Rule 404(b)(4) is merely "a variation of the argument[s] that [were] presented" in its brief. This is simply not so. Each subsection of Evidence Rule 404(b) contains a distinct rule governing the admission of evidence of a person's other crimes. Our decision in Carpentino's appeal illustrates that these subsections work independently: the State argued that the challenged evidence was admissible under subsections (b)(1) and (b)(2), and we were accordingly obliged to address each subsection separately (and at length).

Even if subsection (b)(4) arguably provides a different basis for admitting the challenged evidence, a claim based on subsection (b)(4) is not merely a reworking or a variant of the State's earlier arguments. It is a new and different argument.

Anticipating that we might take this view of the matter, the State next asks us to make an exception to the normal rule that new arguments can not be raised in a petition for rehearing. The State argues that we should relax this rule in the interest of justice because the challenged evidence in Carpentino's case is so clearly admissible under Evidence Rule 404(b)(4). But again, this is not so.

---

**2.** *See id.* at 553.

**3.** See id. at 553–54.

The State's argument requires us to interpret a statute that has not previously been construed: the definition of "domestic violence" codified in AS 18.66.990(3) and (5). The State contends that this statutory definition of "domestic violence" clearly includes non-violent acts of sexual abuse. But as we explain below, the meaning of this statute is not clear. Moreover, the State's interpretation of this statute presents difficult legal issues because it tends to make Evidence Rule 404(b)(2) superfluous. Finally, even if we accepted the State's interpretation of the statute, the evidence regarding the victim's three-year-old sister would still not be admissible under Evidence Rule 404(b)(4) because the State never alleged that Carpentino engaged in (or attempted to engage in) sexual misconduct with the victim's sister.

*The relationship between Evidence Rule 404(b)(4) and the definition of "domestic violence" codified in AS 18.66.990(3)*

Evidence Rule 404(b)(4), by its terms, applies only to "prosecution[s] for a crime involving domestic violence". At first blush, it would seem that Evidence Rule 404(b)(4) has no application to Carpentino's case. Carpentino was charged with sexually abusing an eight-year-old child. Although non-violent sexual relations with a minor are rightly condemned, most people would not apply the term "domestic violence" to this criminal activity. Rather, "domestic violence" is normally understood to mean violent assault committed by one domestic partner against another.[4]

But the State points out that Evidence Rule 404(b)(4) uses a special definition of "domestic violence". Rule 404(b)(4) declares that, for purposes of that rule, "domestic violence" and "crime involving domestic violence" have the meanings specified in AS 18.66.990. The State argues that, under the definitions contained in AS 18.66.990, any person who has sexual relations (even non-violent sexual relations) with a minor living in the same household commits an act of "domestic violence".

The State is correct that AS 18.66.990 contains a broad definition—indeed, a potentially sweeping definition—of "domestic violence". According to subsection (3) of this statute, the terms "domestic violence" and "crime involving domestic violence" include any of the following crimes (and attempts to commit any of the following crimes) when committed by one household member against another:

(A) a crime against the person under AS 11.41;

(B) burglary under AS 11.46.300–11.46.310;

(C) criminal trespass under AS 11.46.320–11.46.330;

(D) arson or criminally negligent burning under AS 11.46.400–11.46.430;

(E) criminal mischief under AS 11.46.480–11.46.486;

(F) terroristic threatening under AS 11.56.810;

(G) violating a domestic violence order under AS 11.56.740; or

(H) harassment under AS 11.61.120(a)(2)-(4)[.]

This list of crimes obviously encompasses a broader range of conduct than physical assault upon a spouse or live-in companion. But this list is only half of the reason why the legislature's definition of "domestic violence" is so sweeping. The other contributing factor is the legislature's expansive definition of "household member".

---

4. See, *e.g.*, the "Introduction" section to Deborah M. Goelman and Roberta L. Valente's *When Will They Ever Learn? Educating to End Domestic Violence* (American Bar Association Commission on Domestic Violence, 1997):

Domestic violence is a societal problem of epidemic proportions. Experts estimate that 2 to 4 million American women are battered every year, and that between 3.3 and 10 million children witness violence in their homes. Battering affects families across America in all socioeconomic, racial and ethnic groups. As information about the extent and impact of domestic violence emerges, it has been identified as a criminal justice issue, a public health crisis, and a costly drain on economic productivity.... Legal professionals who are uninformed about domestic violence issues may endanger the safety of victims or contribute to a society which has historically condoned the abuse of intimate partners.

Under AS 18.66.990(3), "domestic violence" occurs whenever one of the above-listed crimes is "committed by one household member against another". One might assume that this phrase refers to crimes in which the perpetrator and the victim share the same household. But the legislature has defined "household member" much more broadly. Under AS 18.66.990(5), "household member" includes:

(A) adults or minors who are current or former spouses;

(B) adults or minors who live together or who have lived together;

(C) adults or minors who are dating or who have dated;

(D) adults or minors who are engaged in or who have engaged in a sexual relationship;

(E) adults or minors who are related to each other up to the fourth degree of consanguinity, whether of the whole or half blood or by adoption, computed under the rules of civil law;

(F) adults or minors who are related or formerly related by marriage;

(G) persons who have a child of the relationship; and

(H) minor children of a person in a relationship that is described in (A)-(G) of this paragraph[.]

Thus, under subsection (E), the term "household member" includes one's first cousins and great-aunts and uncles, no matter where they reside. Under subsections (C) and (H) (in combination), "household member" also includes the children of a high school or college sweetheart that one has not seen or thought of in thirty years.

*Potential difficulties posed by the statutory definition of "domestic violence"*

The apparently expansive scope of "crime involving domestic violence" leads to some strange results.

For example, if an elderly uncle comes to visit his favorite nephew and, while lighting his pipe, recklessly scorches a table cloth or a chair, the old man has seemingly just committed an act of "domestic violence" as defined in AS 18.66.990(3). That is, the uncle has committed the listed offense of criminally negligent burning under AS 11.46.430 (negligently damaging the property of another by fire), and the victim is related to the perpetrator within the fourth degree of consanguinity—thus qualifying them as "household members" under AS 18.66.990(5)(E).

Similarly, if a group of former college roommates decide to hold a twenty-year reunion at one of their homes, and if one of the visiting former roommates gets drunk and recklessly jams his friend's CD player while trying to insert a CD into it, this roommate has seemingly just committed an act of "domestic violence". The intoxicated roommate has committed the listed offense of fourth-degree criminal mischief under AS 11.46.486(a)(1) (tampering with the property of another with reckless disregard for the risk of harm or loss), and all of the former college roommates are "household members" under AS 18.66.990(5)(B).

Because the statutory definition of "domestic violence" apparently leads to these counter-intuitive results, we conclude that the meaning of this statute is not as clear as the State would have it. Rather, the interpretation of AS 18.66.990(3) presents difficulties. And because Evidence Rule 404(b)(4) expressly incorporates this statutory definition of "domestic violence", the proper scope of Evidence Rule 404(b)(4) is likewise subject to potential dispute. In other words, the meaning of Evidence Rule 404(b)(4) is not "plain".

There is yet another problem with the State's interpretation of Evidence Rule 404(b)(4). If the statutory definition of "domestic violence" is taken at face value and applied to Evidence Rule 404(b)(4) as the State suggests, then subsection (b)(4) would seemingly make Evidence Rule 404(b)(2) obsolete in prosecutions for sexual abuse of a minor.

Evidence Rule 404(b)(2) applies to "prosecution[s] ... involving ... sexual abuse of a minor". It authorizes the admission of evidence "of other acts by the defendant toward the same or another child", but only if the proposed evidence meets the three foundational criteria set forth in subsections (i), (ii), and (iii)—that "the prior offenses (i) occurred within the 10 years preceding the date of the

offense charged[,] (ii) are similar to the offense charged[,] and (iii) were committed upon persons similar to the [victim]."

But under the State's interpretation of Evidence Rule 404(b)(4), evidence of the defendant's sexual abuse of other children would be admissible without regard to whether the State proved the three foundational criteria set forth in subsection (b)(2). This follows because, under the State's interpretation of AS 18.66.990(3), any prosecution for sexual abuse of a minor would be a "prosecution for a crime involving domestic violence", and any act of sexual abuse of a minor would constitute a "crime involving domestic violence".

Sexual abuse of a minor (in any degree) is "a crime against the person under AS 11.41", thus satisfying the requirement of AS 18.66 .990(3)(A). And, seemingly, sexual abuse of a minor will invariably be "committed by one household member against another"—because, under AS 18.66.990(5)(D), the definition of "household member" includes not only adults and minors who live in the same household but also "adults or minors who are engaged in or who have engaged in a sexual relationship". In other words, even when the perpetrator and the victim have never lived together, sexual abuse of a minor seemingly will (by definition) invariably constitute "domestic violence". Thus, under the State's interpretation, evidence of a defendant's sexual abuse of another child will always be admissible under Evidence Rule 404(b)(4) even though the State can not prove the foundational facts that are required to make this same evidence admissible under Evidence Rule 404(b)(2).

■ Such an interpretation of Evidence Rule 404(b)(4) "violates one of the primary rules of statutory construction: that a court should assume that the legislature did not enact redundant or useless statutes."[5] As the Alaska Supreme Court has declared, "One of the prime directives of statutory construction is to avoid interpretations that render parts of a statute 'inoperative or superfluous, void or insignificant'."[6] The

State's interpretation of Evidence Rule 404(b)(4) would seemingly inflict this fate on Evidence Rule 404(b)(2).

■ For these reasons, we reject the State's invitation to relax the normal rule that new contentions can not be raised in a petition for rehearing. Even assuming that we would relax this rule when faced with obvious error and manifest injustice, the State has shown neither obvious error nor manifest injustice here. The State's request for relaxation of the rule hinges on its underlying assertion that the challenged evidence in Carpentino's case was clearly admissible, beyond any argument, under Evidence Rule 404(b)(4). As we have explained at length, that is not the case.

*Even under the State's interpretation of Rule 404(b)(4), the State's evidence regarding the three-year-old sister would not be admissible*

■ There is one more problem with the State's assertion of plain error. Even if we accepted the State's interpretation of "domestic violence", the State's evidence that Carpentino once shared a bed with the victim's three-year-old sister would still not be admissible under Evidence Rule 404(b)(4). The State never alleged that Carpentino engaged in (or attempted to engage in) sexual misconduct with the sister. Thus, even under the State's interpretation of "domestic violence", the State never alleged that Carpentino engaged in a "crime involving domestic violence" with the three-year-old. The State thus failed to establish the necessary foundation for admitting this evidence under Rule 404(b)(4).

*Conclusion*

The State acknowledges that the law normally precludes a party from raising a new argument in a petition for rehearing. Nevertheless, the State asserts that the disputed evidence in Carpentino's case is incontrovertibly admissible under Evidence Rule 404(b)(4), and we should therefore relax the

---

**5.** *Wurthmann v. State,* 27 P.3d 762, 772 (Alaska App.2001) (Mannheimer, J., dissenting).

**6.** *Champion v. State,* 908 P.2d 454, 464 (Alaska App.1995) (quoting *22,757 Square Feet, more or less v. State,* 799 P.2d 777, 779 (Alaska 1990)).

normal rule in order to prevent manifest injustice.

As we have explained here, half of the State's evidence (the evidence relating to the victim's three-year-old sister) is incontrovertibly *inadmissible* under Rule 404(b)(4), even as the State has interpreted it. Moreover, the State's interpretation of Rule 404(b)(4) presents serious legal difficulties. In short, the State's evidence was not clearly and incontrovertibly admissible under Evidence Rule 404(b)(4).

Because the State has failed to show that our earlier decision was manifest error, we need not decide whether we should recognize an exception to the normal rule that new issues can not be raised in a petition for rehearing.

The State's petition for rehearing is DENIED.